Rosemary ROY et vir, Relators,

v.

Edward J. DRAKE et al., Respondents.

No. 15203.

Court of Civil Appeals of Texas.

Dallas.

June 19, 1956.

M. J. McNicholas, Dallas, for relators.

Biggers, Baker, Lloyd & Carver, Dallas, for respondents.

DIXON, Chief Justice.

Relators with our permission have filed an application for a writ of mandamus.

They ask for a writ addressed to the respondents, Edward J. Drake, Chairman of the Dallas County Democratic Executive Committee, Manuel DeBusk, Secretary of said Committee, and the Committee itself, directing said respondents to "place the name of Rosemary Roy on the Democratic Primary Ballot for precinct chairman in Precinct No. 209 * * * and for other relief, legal or equitable, to which your Relator may be justly entitled." This Court has "power, or authority, or jurisdiction" to hear the application and to issue such a writ under art. 1735a, V.A.C.S.

The controversy requires us to construe sec. 2 of art. 13.12 of our Election Code, V.A.T.S., passed by the Legislature in 1951. The material part of Sec. 2, art. 13.12 of the Election Code, is as follows: " * * * such request shall be filed not later than the first Monday in May preceding such primary; and shall be considered filed if sent to such chairman at his post-office address by registered mail from any point in this State * * *."

In her application relator Rosemary Roy has alleged that on May 7, 1956 she filed with the County Chairman by mail her application for her name to be placed on the ballot in the Democratic Primary as a candidate for the office of precinct chairman in Precinct 209, Dallas County, Texas; and that she deposited with the Committee the sum of $2.50. By return mail relator was advised by Manuel DeBusk, Secretary of the Committee, that her application had been accepted and that her name would appear on the ballot. However on or about May 29, 1956 relator received a letter from said Manuel DeBusk advising her that her name could not be placed on the ballot of the Democratic Primary inasmuch as her letter containing the application had not been sent by registered mail as required by art. 13.12, sec. 2, V.A.C.S., our Election Code.

The above allegations of relator are supported by two exhibits. One of them is the original receipt for relator's filing fee of $2.50. This receipt contains these recitations: "Date 5/7/1956; Received of Mrs. Rob S. Roy, Jr., Two and 50/100, $2.50 * * * for Precinct Chairman Prec. 209. Dem. Exec. Committee by M. Nicholson." The other exhibit is a letter signed by Manuel DeBusk, Secretary. This letter contains among others these recitations: "Our records indicate that you have requested your name placed on the official ballot of the Democratic Primaries. It was received and filed on May 7, 1956, * * * You have deposited with the Committee the sum of $2.50, your filing fee. * * * You requested your name to appear on the ballot as follows: Mrs. Rosemary Roy." The letter further informed relator of the law regarding the filing of expense accounts, and in a concluding paragraph invited relator to attend a meeting of the Executive Committee on June 18, 1956 at which meeting the Committee would determine by lot the order in which names would appear on the ballot.

In their written answer, signed by Edward J. Drake, Committee Chairman, respondents allege that "so far as known to Respondents," relator's application was executed May 7, 1956, the final date according to law on which said application might be filed; that said application was mailed May 7, 1956 but was not delivered until May 8, 1956, a day late under the law; and that said letter was not sent to such chairman by registered mail.

In connection with these allegations respondents attach two exhibits: One exhibit is a photostatic copy of the front and back of an envelope. The front shows the envelope to be addressed to "Democratic

Executive Committee, County Court House, Dallas, Texas" and bears a postmark: "May 7, 11 PM—1956." The back of the envelope has this notation: "915 No. Buckner Blvd. Mrs. Rosemary Roy" and bears a postmark: "May 8—5 AM—1956." The other exhibit is a photostatic copy of relator's application which bears the following notations: "Filed May 7, 1956 Edward J. Drake, County Chairman by Manuel DeBusk, Secretary. Receipt No. 293 Rec'd check 5/7/56."

From the above statement it will be apparent that the only evidence to support respondents' contention that the application was not actually received by the County Chairman until May 8, 1956 is the back of the envelope showing a postmark "May 8—5 AM—1956" which envelope presumably contained relator's application. All the other evidence, including respondents' own official record, shows the application to have been actually received by the County Chairman May 7, 1956. In their answer respondents say that the notation on relator's application as being filed on May 7, 1956 was in fact inadvertently and incorrectly made by an employee of the County Committee at the address given on the envelope. However in view of the conclusion we have come to in this matter, we believe it is immaterial whether the application was actually received by the County Chairman on May 7, 1956 as indicated by his own official records, or on May 8, 1956 as now contended by the Chairman.

Respondents' main contention is that relator's application, though mailed on May 7, 1956, the last day for filing applications, did not actually reach the Chairman until May 8, 1956, one day after the expiration of the time limit for filing. And having been sent by special delivery mail instead of registered mail as provided by art. 13.12, Election Code, the application cannot be considered as filed in time.

In support of this contention respondents cite us cases holding that the filing of an application in time is mandatory, not merely directory. Among the cases cited is Burroughs v. Lyles, 142 Tex. 704, 181 S.W. 2d 570, 573. In that case our Supreme Court in 1944 approved a number of opinions by Attorneys General construing old art. 3112, V.A.C.S., which has now been superseded by art. 13.12 of our Election Code. The opinion approved by our Supreme Court was to the effect that a candidate for State Senate was required to have his application for his name to be placed upon the ticket in the hands of the district chairman or the respective county chairmen within the time prescribed by law; " 'and that transmission by mail where application failed to reach chairmen was not sufficient compliance to get name upon ballot.'" (Emphasis supplied.)

■ We of course do not disagree with the above 1944 holding of our Supreme Court construing old art. 3112, V.A.C.S. But the quoted part of the opinion referring to transmission by mail, in our opinion, is not applicable to art. 13.12 of our Election Code passed by the Legislature in 1951. Old art. 3112, which the Supreme Court construed, did not contain the words "and shall be considered filed if sent to such chairman at his post-office address by registered mail from any point in this State * * *." The present art. 13.12, Election Code, passed by the Legislature in 1951, does include the words.[1] And by including such words in art. 13.12 we think that the Legislature meant to say in 1951 that hereafter an application will

1. Article 13.12 of our Election Code, enacted in 1951, combines, with modifications, old Articles 3111, 3112 and 3113, enacted in 1905. Article 3111, pertaining to nominations for State offices, was the only one of the old statutes containing the provision "shall be considered filed if sent to such chairman * * * by registered mail * * *." The other two of the old statutes pertaining respectively to district and county offices, including precinct offices, did not contain the quoted provision.

be considered filed in time if it is mailed on or before the last day for filing, though it may not actually reach the hands of the chairman on or before the last day for filing.

■ What then is the effect of the relator's sending her application by special delivery mail instead of by registered mail? In our opinion her action constituted a substantial compliance with the law. The time limit as provided in art. 13.12 has been met and that is the mandatory part of the statute. That the application was sent by special delivery mail instead of registered mail is an irregularity violative of a directory provision of the statute.

The point has already been passed on adversely to respondents in McWaters v. Tucker, Tex.Civ.App., 249 S.W.2d 80, 83. In that case, in which the material facts are quite similar to the facts as asserted by respondents here, the court said: "The only failure to comply with the statutory requirements claimed by respondents is that relator failed to have said envelope and its contents transmitted to respondent Tucker by Registered U. S. Mail. There is no suggestion that the postmark is not authentic and genuine, and it establishes absolutely as a matter of law that the same was duly deposited in the U. S. mails at the time indicated, and there is no suggestion that transmittal by the U. S. Registered mail would have been more efficacious or more speedy than the open mail proved to be. We deem that respondent Tucker was not justified in failing to accept said application as the same would in no-wise interfere with the uniformity of the administration of the election laws by him."

■ Respondents also contend that relator's application is fatally defective because of a lack of proper parties, since it is the primary committee which makes up the official ballot, not the County Chairman alone; and further that the application is prematurely filed since the primary committee under art. 13.12 does not meet until the fourth Monday in June, which is June 25, 1956.

We overrule respondents' above contentions. The undisputed facts presented to us are that the County Chairman has refused to accept relator's application. Under art. 13.14, Election Code, the primary committee, of which the County Chairman is an ex officio member and chairman, must make up the ballot in accordance with the certificates of the State and district chairmen and *the requests filed with the county chairman*. It is evident that the primary committee cannot put relator's name on the ballot if relator's application is not accepted by the County Chairman and included in the requests filed with the Chairman. Relator's prayer is in our opinion sufficient, especially since it also asks for "whatever other relief, legal or equitable, to which your Relator may be entitled."

Relator's application for a writ of mandamus is granted. The writ will issue to the respondents directing them to accept as filed in time the application of relator Rosemary Roy that her name be placed on the official ballot of the Democratic party for the primary election to be held in 1956 as a candidate for Precinct Chairman, Precinct No. 209, Dallas County, Texas.

■ A motion for rehearing by respondents will not be entertained, for the reason that the time is so short between this date and the date for making up the ballot, that the question might become moot before we could act on a motion for rehearing. Therefore the writ will issue immediately.