GROVER CANTRELL V. MAURICE CARLSON ET AL

No. A-6884. Decided June 11, 1958.
(314 S.W. 2d Series 286)

*Albert Reagan* and *Joe McNicholas,* of Dallas, for relator

*Currie, Kohen & Freeman and Ralph W. Currie,* all of Dallas, respondents.

MR. JUSTICE CALVERT delivered the opinion of the Court.

In an original proceeding filed in this Court relator, Grover Cantrell, seeks a writ of mandamus to compel respondents to accept his application and to place his name on the ballot to be used in the Republican Primary Election to be held in Dallas County in July.

A similar petition for writ of mandamus filed by relator in the Court of Civil Appeals for the Fifth Supreme Judicial District of Texas was by that court denied. 313 S.W. 2d 624.

Relator filed with respondents his request to have his name placed on the ballot to be used in the Republican Primary election as a candidate for nomination for Member of Congress from the Fifth Congressional District. The request is in proper form and meets all requirements prescribed by Article 13.12, Vernon's Annotated Texas Election Code. He tendered in due time the filing fee required of those seeking nomination as the Republican candidate for Congress. His petition shows that he is eligible to hold the office he seeks.

In his petition filed in this Court relator swears that whereas in past years he was a member of the Democratic Party, he is now a member of the Republican Party. And if the separate taking of an oath to support the nominees selected at the Republi-

can Party Primary election is a prerequisite to the right to have his name placed on the ballot,[1] relator has fulfilled that requirement. He has included in his petition a statement that he will support Republican Party primary nominees. The petition is sworn to in such fashion as to support a charge of perjury. In addition, he has attached to his petition a separate instrument in which he states under oath: "I am a Republican, and on my oath I state that I will support the nominee of the Republican Primary for the office of United States Representative, 5th Conressional District, and all other candidates who are nominated in the Republican Primary."

The only reason offered by respondents for refusing to accept relator's application is that he stated at the time of filing it that he was really a member of the Democratic Party but felt he had a better chance of securing nomination by the Republican Party. Assuming the statement to have been made, it does no more than put in issue the good faith of relator.

■ A request made under the provisions of Article 13.12 for a place as a candidate on a party primary ballot imports a present good faith intention of affiliating with the party. Past or present words or conduct may open that intention to doubt and question. But party officers and Executive Committees may not decide the issue against the candidate and so deciding refuse to place his name on the party primary ballot. This Court so held in Love v. Wilcox, 119 Texas 256, 28 S.W. 2d 515, 525, 70 A.L.R. 1484. We there said that "The power to pass on the sincerity of the candidate's pledge and to endorse or condemn his past party record is to be exercised by the party voters." Further, we quoted with approval from an opinion of the Attorney General as follows: "If proper application is made the Committee should place the name of the candidate on the ballot and the members of the party—the voters themselves—would be the best judges of his fidelity to the party and make that decision at the polls."

If our decision in Love v. Wilcox did not settle this question once and for all, surely our decision in McDonald v. Calhoun, 149 Texas 232, 231 S.W. 2d 656, should be taken as having done so. In that case it appeared that Democratic Party officials were refusing to place the name of J. E. McDonald on the primary ballot as a candidate for the Democratic nomination for the

---

1  One of the reasons given by the Court of Civil Appeals for denying relator's petition was that he had not offered to take the pledge which Article 13.11, Texas Election Code, requires be placed at the top of all primary election ballots.

office of Commissioner of Agriculture. Refusal was predicated on a finding that McDonald "was not acting in good faith in his offer to take the party pledge to support the nominees of the 1950 primary * * *." Instances of past party infidelity were enumerated as evidence that he was not entering the party primary as a good faith member of the Democratic Party. This Court granted McDonald a writ of mandamus, stating that "All the issues thus raised are foreclosed by the decision of this Court in Love v. Wilcox, 119 Texas 256, 28 S.W. 2d 515, 70 A.L.R. 1484, rendered in 1930."

■ There is no restraint, legal or moral, on the right of a citizen to change his affiliation, from year to year, from one political party to another for whatever reason seems to him sufficient. His reason may well be selfish. He may feel—as evidently does relator if we may judge from his statement—that a change of party affiliation will enhance his own political and personal fortunes. It is for political party voters, not their officials, to judge whether a candidate for nomination should be rejected because his candidacy is motivated by selfish considerations.

■ Respondents are, and on May 5 were, under a legal duty to accept relator's application and to place his name on the Republican Party primary ballot as a candidate for the nomination he seeks. No other holding would comport with sound public policy.

We assume respondents will be guided by this opinion and will accept and file relator's application and place his name on the primary ballot. If they do not do so, writ of mandamus will issue.

No motion for rehearing will be entertained. Rule 515, Texas Rules of Civil Procedure.

Opinion delivered June 11, 1958.

MR. JUSTICE GRIFFIN joined by JUSTICE SMITH, dissenting

I respectfully dissent.

It is uncontroverted and uncontradicted that at the time Relator filed his application for his name to be placed on the ballot of the Republican Party as a candidate for Congressman,

he made the statement that he was "A Democrat who thinks he can be nominated on the opposite ticket." I cannot subscribe to the doctrine that one who states he is a Democrat at the time he files his application to have his name placed on the ballot of any other party is entitled to a place on that ballot.

I do agree that neither the county chairman, nor the executive committee nor any other party committee has the right to deprive a person of a place on the ballot when such person files an application on the forms furnished by the party and unqualifiedly submits himself for affiliation with the party. But in this case it is an undisputed fact that the person seeking a place on the ballot of another party says he is a member of a different party, and I cannot agree that he is entitled to have a writ of mandamus requiring that his name be placed on the ballot of such party of which he states he is not a member.

Further, both sides, in oral argument, agreed that the rights of Relator were fixed as of May 5, 1958, the date on which he filed his application, and that anything he might have done since that time could not add to or take away from these rights.

Opinion delivered June 11, 1958.

MR. JUSTICE SMITH dissenting.

I have joined Justice Griffin in the disenting opinion he has this day written, but I feel that it is necessary that I write my views in addition to those expressed by Justice Griffin. The respondents, Maurice Carlson et al., have filed what I deem to be a well prepared brief on the question, and, in view of the fact that this opinion must be ready for delivery by Wednesday, June 11, 1958, I am adopting the brief as my dissenting opinion.

The material facts concerning this controversy are relatively few in number and are virtually uncontroverted. It is believed that the following is an accurate factual summary upon which relator's right to relief must depend:

The Republican Party is an organized political party whose candidate for Governor at the latest general election polled more than 200,000 votes. It is, therefore, governed by the provisions of that section of Chapter Thirteen, Texas Election Code, dealing with political parties of over 200,000 just as is the Democratic Party.

Respondents agree that the relator possesses the qualifications specified in the United States Constitution, and in the Constitution and statutes of this state to hold the office of Congressman. On May 5, 1958, the last day for filing an application for a place on the primary ballot, relator tendered to respondent Carlson, in his capacity as chairman of the Dallas County Republican Executive Committee, an application for a place on the Republican Primary ballot for the July primary as a candidate in said Republican primary for Congress.

At the time he tendered such application for filing he volunteered the information that he was not a person affiliating with the Republican Party, but was a "Democrat who thinks he can get nominated on the opposite ticket".

At that time the Republican Committee had already announced as a matter of policy that only those persons affiliating with the Republican Party were entitled to a place on the primary ballot of the Republican Party. The matter of relator's attempted filing was reported by respondent Carlson to respondent committee at a meeting of the Committee held on May 12, 1958. Relator's attempted filing was rejected by respondent committee on the ground that relator was, both at the time he offered to file and at the time of the committee meeting on May 12th, a Democrat and one not then and there affiliated with the Republican Party.

Thereupon relator sought the remedy of mandamus under Article 1735a Vernon's Texas Civ. Stat., from the Court of Civil Appeals at Dallas. A full hearing was had. The uncontroverted facts presented at that hearing showed that relator was still an avowed Democrat, and the issue presented and determined was whether a member of one political party had the legal right to compel the placing of his name on the primary ballot of the other party. The Court of Civil Appeals held that relator had no such right and the writ was refused. The decision of the Court of Civil Appeals was rendered on May 30, 1958.

On Monday, June 2, 1958, relator filed his Petition for Writ of Mandamus in this Court. In this petition he asserted that he was, as of that date, a Republican, and for the first time offered to take the primary test pledge prescribed by Article 13.11. Construed in the light most favorable to relator, his petition does no more than to assert that he changed his party affiliation

from Democrat to Republican on June 2, 1958, for there is nothing in it that avers an affiliation with the Republican Party at any time prior thereto.

Respondents, by their sworn answer, state that at all times, and at least up until June 2, 1958, relator was an avowed Democrat who proclaimed himself a member of that Party and who, as a Democrat, sought to become a candidate for office in the Republican Party.

By virtue of the provision of Article 14.01 of the Election Code, the office of Congressman, Fifth District of Texas (the office here involved) is a county office, since it is one to be filled by the voters of only one county. The statute relating to requests to go on the ballot is that portion of Article 13.12 which pertains to county offices. The pertinent provisions are here reproduced as follows:

"The request to have the name of any person *affiliating with any party* placed on the official ballot for a general primary as a candidate for the nomination *of such party* * * * for any county * * * office * * * shall be governed by the following:

"1. Such request shall be in writing, * * *

"2. Any such request shall be filed * * * with the county chairman in the case of county and precinct officers; such request shall be filed not later than the first Monday in May preceding such primary, * * *" (Emphasis supplied).

Article 13.14 provides that the primary ballot shall be made up, so far as county offices are concerned from the requests filed with the county chairman. As was pointed out in Roy v. Drake, 292 S.W. 2d 848,851, the name of an applicant could not be put on the ballot unless his application be accepted by the County Chairman and included in the requests filed with the Chairman. The time for filing of the request is mandatory. Roy v. Drake, supra, and case therein cited. Obviously, then, if respondents were under any duty to accept the attempted filing of relator, that duty arose on the day it was tendered by relator, same being the deadline day. This means, of course, that whether respondents were right or wrong must be measured by the facts as they then existed.

Indeed, it is one of the requisites for the issuance of a writ

of mandamus that the relator show that there exists a legal duty then due at the hands of the respondent. He is not entitled to the writ otherwise. Love v. Wilcox, 119 Texas 256, 28 S.W. 2d 515,526, 70 A.L.R. 1484.

The question, therefore, is this: On May 5, 1958, when relator tendered his request to respondent Carlson, stating at the same time that he was not a person *affiliating* with the Republican Party but "a Democrat who thinks he can be nominated on the opposite ticket", was Carlson then and there under a duty "imposed upon him by law", within the meanin of Article 1735(a) to accept and file said request? (Empasis added).

Relator would have this Court answer the above question in the affirmative. It is important to observe here that relator's petition is based upon the theory that the respondents' duty to accept his request was a duty due to relator on May 5, 1958, the day the request was tendered. Examination by us of his petition and brief fails to disclose anywhere the theory that relator's subsequent change of party affiliation from Democrat to Republican gave him any rights which he did not theretofore already possess.

If respondent Carlson was, on May 5, 1958 under a duty imposed by law to accept relator's request, what law imposed that duty? Relator says it is Article 13.12 of the Election Code. The pertinent provision of this Article have been heretofore quoted. It is apparent that in reading this Article relator has simply omitted the words which we have emphasized in the foregoing quotation. To me it sems so plain as to require no extended discussion that when the statute says that the request "to have the name of a person affiliating with any party" placed on the ballot, it means that no person has an enforceable right to be placed on the ballot of a party unless he be then and there affiliated with the party.

To say the least, Article 13.12 applies, by its own terms only to those persons who at the time the request is made are then and there affiliated with the political party in whose primary they desire to participate as a candidate. Relator by his own pronouncement removed himself from that class of persons for whose benefit the law was enacted. Since the law's provisions do not apply to relator, respondent violated no legal duty then owing to relator by refusing to accept his request.

It does not follow, of course, that the construction of Article 13.12 which I here advocate necessarily means that a political committee would be prohibited by virtue of this Article from accepting the request of one not then and there affiliated with the party. The two situations are not mutually exclusive. For example it was held in Dancy v. Hunt, 294 S.W. 2d 159 (er. ref. n.r.e.) that while a defeated primary candidate could not compel by mandamus the placing of his name on the general election ballot as an independent, because of the clean-hands doctrine, the successful primary candidate could not maintain mandamus to compel the removal of such person's name from the general election ballot when it had been placed there despite the existence of the moral obligation.

Articl 13.12 provides a statutory method by which a person then and there affiliating with a political party may insure that his name is placed on the primary ballot as a candidate for the nomination of such party for any office to be voted on at that party's primary. No such provision is made in the laws of this state for the benefit of a person not so then and there affiliating with that particular political party. Hence, there is no "duty imposed by law" within the meaning of Article 1735(a) binding the officers of a political party to accept such request from any person except one then and there affiliating with that party.

It is settled law in this state that in the absence of a statute regulating how a political party shall select its nominees a political party is free to select any method it chooses, agreeably with its customs and usages, so long as it does not pursue a method expressly prohibited by law. Kilday v. Germany, 139 Texas 380, 163 S.W. 2d 184; Stanford v. Butler, 142 Texas 692, 181 S.W. 2d 269, 153 A.L.R. 1054.

The Republican Party had theretofore adopted a policy to the effect that no person had a right to seek nomination in a Republican Primary for office except one affiliated with the Republican Party. I submit that this is a method of selecting nominees of the Party and that there is no law expressly prohibiting such action. Therefore, respondents were within their rights in declining to accept relator's request.

Love v. Wilcox, supra, is, of course, a landmark case. Senator Love was at all times a Democrat. He offered to take the primary pledge test prescribed by then Article 3110, and now appearing without change as Article 13.11 of the Election Code. This Court

said in that opinion (119 Texas 256, 277-278, at page 28 S.W. 2d 525) :

"* * * The Committee is utterly wanting in authority to subtract from or add to the words of the statutory pledge, which is to be taken in the light of the definition of its terms by this Court. The relator fully complies with the law's requirements in so far as promises about his future political action is concerned when he offers to take 'the test prescribed by Article 3110, Revised Civil Statutes, and to comply with the pledge contained therein to the utmost of conscience and good faith.' "

In McDonald v. Calhoun, 149 Texas 232, 231 S.W. 2d 656, this Court followed Love v. Wilcox. Here, too, relator, McDonald asserted he was a Democrat and at the time of tendering his application offered to take the primary plede, prescribed by Article 3110, now Article 13.11. This Court said that when he made that offer he had done all that was required and the good faith character of the offer was beyond the power of the committee to determine.

In these cases the implication is plain. The relators there were required to do no more than to assert their party affiliation and declare their intention of supporting its nominees at the time they sought to get on the ballot, but it is apparent that this Court felt they were required to do that much. Here, we have a siuation where relator Cantrell not only failed to offer to take the primary test pledge prescribed by Article 13.11. He openly stated that he was not affiliated with the Republican Party.

In every case where the subject has been mentioned the Courts of this state have recognized the power of political parties to confine party activities to those persons who were then members of the political party affected. See in this connection the several cases cited by the Court of Civil Appeals on page 5 [313 S.W. 2d 627] of its opinion handed down May 30, 1958 in the mandamus suit brought by this same relator against these same respondents.

In his brief relator admits that both Senator Love, in Love v. Wilcox and Commissioners McDonald, in McDonald v. Calhoun, offered to take the primary test pledge and that relator did not. He argues, however, that the primary test pledge was omitted from the Election Code and therefore, is no longer required. Article 3110 was re-enacted as Article 13.11, without

change. The Legislature is presumed to have intended that the unchanged words should have the effect and meaning given to them by the previous decisions of the Supreme Court. Love v. Wilcox, supra.

The only factual distinction between the situation before this Court and the one presented to the Court of Civil Appeals is that on June 2, 1958, relator declared for the first time that "he is now a Republican". No statement was made that he was a Republican at any time prior thereto. The conclusion is inescapable, therefore, that he changed his party affiliation on June 2, 1958. Relator makes no contention that his change in party affiliation gave him any additional rights. On the contrary he states in his brief that though he is now willing to comply with all the provisions of the Republican Party, the Election Code does not require him to do so.

In a mandamus proceeding a relator is held to a very strict accountability so far as averments are concerned. Greater certainty of pleading is required. 28 Texas Jur. 634. The rule is well settled that relator must affirmatively allege every fact necessary to his recovery and the basis therefor. No intendments are to be indulged. Wortham v. Walker, 133 Texas 255, 128 S.W. 2d 1138, 1151.

Thus, it would appear that since relator does not base any right of recovery upon his subsequent change of party affiliation, this Court may not do so.

Does his subsequent act in uniting with the Republican Party make any difference? If the respondents were correct in their original action, what duty imposed upon them by law have they failed to obey since that time? Relator has asked for nothing at their hands since he became a Republican. He has tendered nothing to them for filing. Ordinarily, a demand and refusal must be shown before relator is entitled to a writ of mandamus. 28 Texas Jur. 638. Moreover, it is well settled that the petition must show that there is no impediment to the doing of the act sought to be enforced. 28 Texas Jur. 639. Relator would, therefore, have to show the following: (1) That after he became affiliated with the Republican Party he again tendered his request, or, in the alternative, that he was ready, able and willing to tender but respondents announced they would refuse such re-tendered request; and (2) that respondents were under a duty imposed by law to accept the re-tendered request, there being no legal impediment to its filing. No such showing is, of

course, made. Further, at this date, the second of the two requirements could not be made because the deadline for filing requests of this nature expired on May 5, 1958. There is, therefore, at this time a legal impediment to acceptance of the request, since the time for filing is mandatory under the staute.

Had relator, at the time he tendered the request, made the party affiliation statement that he made for the first time on June 2nd, a different question would have been presented. It might even be that had he made such declaration at any time before midnight on May 5, 1958, a different question might exist. However, he did none of those things. He remained an avowed Democrat until after the Court of Civil Appeals had determined that he had no clear legal right to be placed on the Republican Primary ballot when he was still a Democrat.

The only time anyone has a clear legal right to be placed on the ballot of a party primary is when the party officials are under the corresponding clear legal duty to act. They are under no duty to act after the time for filing has expired. When the deadline was passed, relator was still a Democrat. He then had no right to compel respondents to perform a duty imposed by law. By the time he chaned party affiliation no one, not even a party member, could compel this action on the part of respondents.

Under the Statement of the Case and the argument under Point One, I have discussed the facts as they appear to me based on all the pleadings. I believe that construed as I have construed them, the facts are really not controverted. However, if my version be disputed by relator, then it is respectfully submitted, that the respondents say the facts are as herein stated. If there be any dispute, the existence thereof is fatal to relator's recovery. As stated by this Court in the recent opinion of Dick v. Kazen, 292 S.W. 2d 913, 915:

"It is elementary and requires no citation of authority that we cannot issue a writ of mandamus if a fact issue is raised by the pleadings and affidavits filed."

The relator has sought to take advantage of the concurrent jurisdiction of this Court and the Court of Civil Appeals—as that jurisdiction is announced in this Court's opinion in Dallas Railway & Terminal Co. v. Watkins, 126 Texas 116, 86 S.W. 2d 1081—in a way that was never intended. Here he has souht to try his case piecemeal. He refused to affiliate himself with

the Republican Party while before the Court of Civil Appeals, no doubt with the hope that he could secure a ruling that respondents were under a duty imposed by law to accept requests to go on the Republican ballot from Democrats. Under the theory of this Court's pronouncement in the Watkins case, supra, he could apply to this Court but only under the facts as he stated them before the Court of Civil Appeals. If litigants are to be permitted to change the facts after an adverse ruling at the hands of the Court of Civil Appeals, the basis for the Court's pronouncement in the Watkins case and others is likely to be destroyed.

It is not believed that the decision of this Court to require litigants to first exhaust their remedy in the Court of Civil Appeals before applying to this Court was ever intended by this Court to permit a litigant to present different theories of recovery in successive petitions before different courts. The theory as we understand the Watkins case is that this Court will exercise its original jurisdiction and grant the writ after the Court of Civil Appeals has declined to do so, provided that in the judgment of this Court, the Court of Civil Appeals should have granted it. In the instant case, the fact of relator's party affiliation since June 2, 1958, if deemed material, was never before the Court of Civil Appeals at all.

If relator's petition can be construed as alleging that he was at all material times a Republican, then relator is in even worse position. In such event he would be guilty of having represented himself a Democrat to the Court of Civil Appeals and a Republican to this Court as of the same time. Under our law it is possible to change party affiliations from day to day as often as may be desired. It is not possible to be a member of both political parties on the same day.

To me this is a matter of grave importance. I cannot bring myself to agree with the majority view that this is a matter for the voters to settle. This relator was an avowed Democrat on May 5, 1958 and remained so until after the Court of Civil Appeals rejected his plea. Then, for the first time, on June 2, 1958, he comes into this Court swearing that he is a Republican. No court should tolerate such conduct whether the relator be a Democrat or Republican. The Republican party has set certain standards which a would-be candidate must meet before he can become affiliated with that party. The relator admits that he deliberately refused to measure up to those standards, and persisted in doing so until June 2, 1958.

The petition for writ of mandamus should be denied. This Court has the duty to safeguard the rights of the people and when it is clearly shown that a would-be candidate has failed to show a clear right to have his name entered upon an official ballot, this Court should not hesitate to deny him that right.

There is nothing in this record to indicate that the officials of the Republican Party arbitrarily denied the relator a place on the ballot. The record shows it is not a question of good faith on the part of the relator. No such issue exists in this case.

Opinion delivered June 11, 1958.