Michael Massengale, Justice
Relator Barbara J. Stalder has filed a petition for writ of mandamus, asking that we order the chair of the Harris County Democratic Party to place her on the 2018 Democratic Party primary ballot for the office of judge of the 280th Judicial District Court.[1] Despite the fact that Stalder's application included enough signatures to qualify as a petition in lieu of the filing fee under Chapter 172 of the Election Code, this dispute requires us to decide whether she is ineligible to seek that office because her check to pay the filing fee was returned for insufficient funds.
We conclude that the Election Code permits a candidate to apply for a place on the ballot by either or both of two methods: by paying a filing fee and filing a petition with the required number of signatures, or by filing a petition in lieu of the filing fee, or both. Further, the party chair is not required to reject an application due to a bounced filing-fee check when the application otherwise satisfies the statutory requirement for a petition in lieu of the filing fee. Therefore the party chair had a ministerial duty to accept Stalder's application, and we conditionally grant relief.
I
The facts are essentially undisputed. Barbara J. Stalder filed an application to be placed on the Democratic Party general primary ballot in Harris County for the office of judge of the 280th District Court.[2] She used the application form promulgated by the Secretary of State.[3]
*217 As part of her ballot application, Stalder enclosed 124 pages containing over 900 petition signatures of registered voters.[4] Stalder used the petition form promulgated by the Secretary of State, titled "Petition in Lieu of a Filing Fee and/or Petition for Judicial Office (for use in a primary election)."[5] In "an abundance of caution" and to ensure that her application "would meet the requirements of the Texas Election Code," she also submitted a personal check for $2,500, with the words "filing fee" handwritten on the check.
Prior to the filing deadline, Stalder's bank returned her check for insufficient funds. But the Harris County Democratic Party did not receive notice of the bounced check until two days after the filing deadline, at which time Stalder could not cure the deficiency with a substitute method of payment.[6]
The party's general counsel sought advice from the Secretary of State's Elections Division.[7] In an email, the party's lawyer acknowledged: "Ordinarily, the fact that a check tendered in payment of a filing fee required by the Texas Election Code was returned for insufficient funds after expiration of the filing period would be fatal to a candidate's right to be listed on the ballot." However, the lawyer also noted that "the check was tendered as a fallback, in case it was found there were insufficient valid signatures on the Petition to permit the Application to be accepted without the payment of a filing fee." The party's general counsel concluded that Stalder satisfied the filing requirements by filing an application with petitions containing more than 750 signatures,[8] and therefore she was not required to pay a filing fee.
The director of the Elections Division initially responded by email to indicate his agreement with the general counsel's analysis.
*218 But shortly thereafter the director sent another email to advise that the Elections Division's legal staff concluded otherwise, stating: "The candidate filed with a fee and can't rely on the signatures as an insurance policy." In further email correspondence, the legal staff explained this conclusion:
The short answer is that we have told candidates that they don't get to give an "insurance check" to be held in reserve in case the petition fails. It is not fair to the people who need the petition because they don't have as much money as other candidates. This unfairness is also contrary to the case law that is the basis for the petition in lieu of filing fee, the purpose of which is to give people with less money an option that will put them on an equal footing.
You ask if the check was irrelevant. On these facts, we think the candidate filed with a filing fee that later failed....
....
In sum, we think the Election Code provides that the candidate must choose one method or the other, and that one method cannot be used as a "backup" or insurance for the other.
Acting on this advice, the party chair informed Stalder that she had "no alternative" and declared her "ineligible to be a candidate on the 2018 Democratic Party General Primary Ballot."[9]
Stalder requested that her application be accepted despite the lack of a filing fee, based on the fact that she obtained 750 signatures of registered Harris County voters. The party denied her request.
II
Stalder contends that the Harris County Democratic Party Chair had a statutory duty to certify her name for the primary ballot because she submitted an application that complied with the Election Code. The party chair frames the issues as whether she had a ministerial duty to treat Stalder's application as a petition in lieu of the filing fee, and whether the bounced check required her to reject the application. No party to this proceeding disputes that Stalder's application and petitions are sufficient if her application is accepted based upon "a petition in lieu of the filing fee" rather than her ineffective attempt to pay the filing fee.[10] Thus, we must interpret the Election Code to decide whether an applicant's submission of a bad check in attempted payment of the filing fee precludes the application from also being considered as a petition in lieu of the filing fee.
It is this court's duty and obligation to exercise the judicial power by *219 applying the law to resolve this dispute,[11] and when a statute is unambiguous we owe no deference to the Secretary of State's informal guidance provided to party officials interpreting it.[12] A writ of mandamus will issue to compel an officer of a political party to perform a ministerial act.[13] "An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion."[14]
A
Stalder contends that the party chair had a duty under the Election Code to certify her name for the 2018 Democratic primary ballot because her application complied with the Election Code. If the application complied with the statutory requirements, the party chair had a legal duty to accept it and submit her name for inclusion on the primary ballot as a candidate.[15]
A candidate seeking a place on the general primary election ballot must make an application.[16] The statutory language at the heart of this dispute, Election Code Section 172.021(b), concerns the requirements relating to filing fees and petitions, and it states: "An application must ... be accompanied by the appropriate filing fee or a petition in lieu of the filing fee...."[17] There are distinct petition requirements applicable to the options of filing the application with or without paying a fee. With a filing fee, Stalder had to submit at least *220 250 petition signatures.[18] Without the fee, she had to submit a minimum of 750 petition signatures.[19] The petitions are considered part of the application.[20]
A fundamental premise underlying the denial of Stalder's application was the assumption she faced a binary choice of applying with a filing fee or a petition in lieu of the filing fee, but not both. From this premise the Elections Division, and subsequently the party chair, concluded that the submission of a check in the amount of the filing fee-with the written notation, "filing fee"-constituted an election of the filing-fee method, and thus a forfeit of the petition-in-lieu-of-filing-fee method.
This restrictive rule has no foundation in the Election Code. The statute easily could have been written to force applicants to elect between methods of filing, but it wasn't. Instead, using the word "or," Section 172.021(b) describes a disjunctive list of two application options, both of which require the filing of a petition. In a disjunctive list of requirements, signified by the use of the conjunction "or," at least one of the options is required but any one or more of the options satisfies the requirement.[21]
Stalder's application was fully consistent with a request to be accepted under the filing-fee method of application or the petition-in-lieu-of-filing-fee method, whichever would result in her name being placed on the ballot. Nothing on the Secretary of State's application form required her to choose between the methods of application. Nothing on the Secretary of State's petition form required such a choice, either. To the contrary, and consistent with the Election Code, the title on the petition form-"Petition in Lieu of a Filing Fee and/or Petition for Judicial Office (for use in a primary election)"-contemplates use of the form for both purposes.[22] Thus, while the party chair's brief suggests that Stalder's application was "never presented" as a petition in lieu of a filing fee, that characterization appears to be an inference *221 drawn from the fact that a fee was paid,[23] and in any event it does not have a basis in the factual record before us.
Stalder attempted to pay a filing fee; as part of her application she also filed petitions containing over three times the number of signatures required if she had relied exclusively on the filing-fee application method. Nothing in Stalder's application paperwork indicated an intention to utilize one application method to the exclusion of the other. The context of the filing-an application for a place on the ballot-suggests that in the absence of any legal prohibition or contrary indication, Stalder invoked any and all legal avenues supported by her submission to achieve her objective of becoming a judicial candidate.
We hold that the Election Code does not require that an application accompanied by a filing fee be treated only as an application under the filing-fee method. All parties concede that Stalder's application was facially compliant with the petition-in-lieu-of-filing-fee method. Thus, the party chair was obliged to submit Stalder's name as a candidate unless prohibited by some other legal requirement.
B
The party chair alternatively suggests that as a result of the bounced check, the Election Code required her to invalidate Stalder's candidacy. The relevant statute provides: "If a payment of a filing fee is returned for insufficient funds after the end of the filing period, the application is not considered to be timely filed, and the authority receiving the application shall inform the applicant that the application was not valid."[24]
The plain text of this statute establishes its inapplicability in this circumstance. The facts are that Stalder's filing fee was returned for insufficient funds before the end of the filing period. Moreover, to the extent that, apart from the effect of this statute, the invalidity of the check caused it to be inadequate to support Stalder's application under the filing-fee method,[25] the return of the check had no effect on the adequacy of her application under the petition-in-lieu-of-filing-fee method.
C
In a late-filed amended response brief, real party in interest Beth Barron sought to incorporate by reference the legal analysis provided to the Harris County Democratic Party by the Secretary of State's Elections Division Staff. Without analyzing the relevant statutory text, that guidance appears to have been driven by the Staff's assessment that an applicant cannot submit an " 'insurance check' to be held in reserve in case the petition fails" because "[i]t is not fair to the people who need the *222 petition because they don't have as much money as other candidates." Importantly, the validity of Stalder's application does not present the question of whether a candidate can submit a filing fee and ask that the party use it only in the event of a defect in a petition in lieu of filing fee. There is no factual record before us to suggest that Stalder did that. To the extent the Elections Division Staff thought that was the circumstance, and to the extent that was a decisive factor in the Staff's analysis, those are not the actual facts before us.
The Staff's guidance further explained: "This unfairness is also contrary to the case law that is the basis for the petition in lieu of filing fee, the purpose of which is to give people with less money an option that will put them on an equal footing." In support of this assertion, the Staff quoted a portion of a 1995 attorney general letter opinion:
In Bullock v. Carter , 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972), the United States Supreme Court held that the primary election scheme then in place under Texas law, where parties financed the cost of the primary elections solely through filing fees and all primary candidates were required to pay a filing fee in order to obtain a place on the ballot, constituted state action creating impermissible wealth classifications for ballot access. Subsequently, in Bullock v. Calvert , 480 S.W.2d 367 (Tex. 1972), the Texas Supreme Court, citing Smith [v. Allwright , 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944) ], found that state financing of party primary elections served a public purpose for purposes of state constitutional prohibitions on grants of public money for private purposes, and overruled earlier Texas Supreme Court case law to the contrary.[26]
While this discussion may be relevant context to explain why Texas provides an option for applicants to seek a place on the ballot without payment of a fee, it does not answer the question of whether the Election Code purports to limit an applicant to choosing only one of the methods of application, nor does it suggest any constitutional restraint on allowing a candidate to pursue either option or both.
Thus, whether or not one method of application may be made contingent on the success of the other-a question not before us-the "fairness" considerations referenced by the Elections Division Staff do not alter our interpretation of the Election Code, nor do they appear to have any relevance to the actual facts presented.
* * *
As our Supreme Court has noted, "access to the ballot lies at the very heart of a constitutional republic."[27] The Court has "strictly construed" statutes that restrict the right to hold office against interpretations needlessly leading to an applicant's ineligibility.[28] "The public interest is best served when public offices are decided by fair and vigorous elections, not technicalities leading to default."[29]
In advancement of those same principles and as required by the plain text of the Election Code, we conditionally grant the petition for writ of mandamus against the Chair of the Harris County Democratic Party. The writ will not issue unless the party chair fails to notify the Clerk of this Court, in writing, upon receipt of this opinion *223 that she has certified Stalder's candidacy as required by Section 172.029(a) of the Election Code and complied with that statute in every respect.

The respondent is the Honorable Lillie Schechter, Chair of the Harris County Democratic Party.

See Tex. Elec. Code § 172.021 (application requirement).

Tex. Sec'y of State , Form 2-2, Application for Place on the Primary Ballot http://www.sos.state.tx.us/elections/forms/pol-sub/2-2f.pdf (Aug. 2017).

See Tex. Elec. Code § 172.021(b) ("An application must, in addition to complying with Section 141.031, be accompanied by the appropriate filing fee or a petition in lieu of the filing fee that satisfies the requirements prescribed by Section 141.062."). In an affidavit submitted in support of her mandamus petition, Stalder has attested that she "personally verified through the Harris County voter registration search the VUID numbers for all the signatures on the petitions," and that "[t]here were approximately 850 signatures with VUID numbers and/or birthdates." See id. § 141.063(a)(2)(B) (to be valid, petition signatures must include "the signer's date of birth or the signer's voter registration number").

Tex. Sec'y of State , Form AW2-3, Petition in Lieu of Filing Fee and/or Petition for Judicial Office (For Use in Primary Election) , http://www.sos.state.tx.us/elections/forms/pol-sub/2-3f.pdf (May 2017).

See Tex. Elec. Code § 172.021(b-1) ("The applicant may resubmit the application before the end of the filing period, but payment of the filing fee may not be made in the form of a check from the same account as that of the payment previously returned for insufficient funds."). The mandamus record does not reflect when Stalder learned that her check bounced, but even if she learned of it at a time when she could have cured the error, that fact would not change our legal analysis.

"The secretary of state is the chief election officer of the state." Tex. Elec. Code § 31.001(a). Under the Election Code, the Secretary of State is charged with the duty to "assist and advise all election authorities with regard to the application, operation, and interpretation of this code and of the election laws outside this code." Id. § 31.004(a). Relatedly, the Secretary of State "shall maintain an informational service for answering inquiries of election authorities relating to the administration of the election laws or the performance of their duties." Id. § 31.004(b).

See Tex. Elec. Code §§ 172.021(e), 172.025(2) ; see Plummer v. Veselka , 744 S.W.2d 347, 349 (Tex. App.-Houston [1st Dist.] 1988, orig. proceeding) (statute requires 750 signatures from a Harris County district court candidate filing a petition in lieu of a filing fee).

The party chair's brief indicates that she regarded the Elections Division guidance as "a directive from the state's Chief Elections Officer." But the brief contains no legal authority to suggest that, having received the Secretary of State's assistance and advice in response to an inquiry, see Tex. Elec. Code § 31.004, the party chair lacked the authority to then form and act upon her own ultimate legal judgment.

In her response, the party chair concedes: "There is no dispute about the fact that Relator did file a timely Application which met the statutory requirements." The brief further notes: "Treating as valid the signatures on the 116 pages which do contain a Circulator's Affidavit meeting the statutory requirements, Relator's Petition contains 798 facially valid signatures which contain VUID numbers, which, as permitted by Tex. Elec. Code §§ 141.065(b) and 141.032(c) Respondent assumes to be the valid signatures of registered voters in Harris County, Texas." Real party in interest Beth Barron, the only other Democratic candidate for the 280th Judicial District Court, adopted the party chair's response "in its entirety."

See Tex. Const. art. 5, §§ 1, 6 (a); Tex. Elec. Code §§ 161.009, 273.061.

Fiess v. State Farm Lloyds , 202 S.W.3d 744, 747 (Tex. 2006) ("an agency's opinion cannot change plain language"); see also Tex. Const. art. 2, § 1 ("The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted."); Tex. Att'y Gen. Op. No. KP-0115, at 8-9 (2016) (evaluating constitutional underpinnings of narrow deference to Texas agencies by Texas courts).

Tex. Elec. Code § 161.009 ("The performance of a duty placed by this code on an officer of a political party is enforceable by writ of mandamus in the same manner as if the party officer were a public officer."); In re Woodfill , 470 S.W.3d 473, 478 (Tex. 2015) ("Mandamus may issue to compel public officials to perform ministerial acts."); In re Francis , 186 S.W.3d 534, 543 (Tex. 2006) ; Davis v. Taylor , 930 S.W.2d 581, 584 (Tex. 1996).

Woodfill , 470 S.W.3d at 478 (quoting Anderson v. City of Seven Points , 806 S.W.2d 791, 793 (Tex. 1991) ).

Tex. Elec. Code § 172.029(a)(2) ("For each general primary election ... each county chair shall electronically submit ... the name of each candidate whose application meets the requirements of Section 172.021 and is accepted by the chair, as the name is to appear on the ballot...."); see also Cantrell v. Carlson , 158 Tex. 528, 314 S.W.2d 286, 288 (1958) ; Witherspoon v. Pouland , 784 S.W.2d 951, 955 (Tex. App.-Dallas 1990, orig. proceeding).

See Tex. Elec. Code § 172.021(a).

This provision also specifies that the application must comply with the general statutory application requirements, such as that it be in writing, signed and appropriately sworn, and timely filed. See id. § 172.021(b) ; see also id. § 141.031 (general requirements for application). It also specifies that a petition in lieu of the filing fee must satisfy certain statutory requirements, such as that it be timely filed and contain valid signatures. See id. § 172.021(b) ; see also id. § 141.062 (validity of petition). These requirements contained within Section 172.021(b) are not at issue in this dispute and have been omitted from the statute as quoted above to clarify the statutory-interpretation question before the court.

An applicant paying a filing fee to become a candidate for district judge in a county with a population of more than 1.5 million residents (such as Harris County) must include a petition with a minimum of 250 signatures. See id. §§ 172.021(e), 172.024(a)(10).

If a judicial candidate chooses to file a petition in lieu of the filing fee, the petition must contain a minimum of 500 signatures, but if the candidate seeks office in a county with a population of more than 1.5 million, the minimum is increased by 250 signatures. See id. §§ 172.021(e), 172.025(2); Plummer , 744 S.W.2d at 349.

See Tex. Elec. Code § 141.032(c) ; In re Angelini , 186 S.W.3d 558, 560 (Tex. 2006) ("the Election Code treats the two as one document").

See Antonin Scalia & Bryan A. Garner , Reading Law: The Interpretation of Legal Texts 116 (2012) (describing "conjunctive/disjunctive canon"). Accord Underwriters at Lloyds of London v. Harris , 319 S.W.3d 863, 867 (Tex. App.-Eastland 2010, no pet.) ("When courts have construed 'or' as a disjunctive term requiring a choice or election, they have generally done so because the statute's language indicates a legislative purpose for this requirement."). Other Texas courts have reached similar conclusions about this statute's meaning by nontextualist interpretive methods. See, e.g. , In re Ducato , 66 S.W.3d 558, 560-61 (Tex. App.-Fort Worth 2002, orig. proceeding) (applying Code Construction Act to justify seeking a "just and reasonable" interpretation, and holding that "a candidate may file more than one application for the same office").

"The literal sense of and/or is 'both or either,' so that A and/or B means (1) 'A,' (2) 'B,' or (3) 'both A and B.' " Scalia & Garner , supra , at 125 (citing Local Div. 589, Amalgamated Transit Union, AFL-CIO, CLC v. Mass. , 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.)).

In an affidavit submitted in support of the party chair's brief, the party's general counsel averred: "The box on the Application indicating that the filing fee was paid by check is checked, indicating the candidate tendered a check in payment of the statutory filing fee; the box which would be checked if the candidate indicated a desire to waive the filing fee by using a petition in lieu of a filing fee is blank." Not noted in the affidavit, but apparent from the record, is the fact that the boxes are not checked by the applicant. On the Secretary of State's application form, the boxes are introduced with the instruction: "TO BE COMPLETED BY CHAIR." The affidavit does not suggest that Stalder instructed the party chair how to complete this part of the form, or that in the process of accepting the form any representative of the party prompted Stalder to characterize her application as satisfying one or both of the application methods.

See Tex. Elec. Code § 172.021(b-2).

See, e.g. , Leach v. Fischer , 669 S.W.2d 844, 847 (Tex. App.-Fort Worth 1984, orig. proceeding).

Tex. Att'y Gen. Op. No. 95-073 (1995).

Francis , 186 S.W.3d at 542.

Id. at 542 & n.34 (collecting cases).

Id. at 542.