# James E. Kilday v. E. B. Germany et al.

No. 8008.  Decided June 26, 1942.
(163 S. W., 2d Series, 184.)

*Perry McComb,* of Conroe, *Gabe Allen,* of Dallas, *Culberston, Morgan, Christopher & Bailey,* of Fort Worth, for James E. Kilday, relator.

*Simon & Wynn* and *Sproesser Wynn,* for respondent, Pierce Brooks.

PER CURIAM:

This case is before us on certified question from the Court of Civil Appeals at Fort Worth.

The Honorable James E. Kilday brought suit in the district court against the State Democratic Executive Committee and others to enjoin the Committee from placing any other than his own name on the ballot for the July, 1942 Democratic Primary, as a candidate for nomination to the office of Railroad Commissioner, to fill the unexpired term of the Honorable Jerry Sadler. The record discloses that the said Jerry Sadler was elected to the office of Railroad Commissioner of Texas in 1938 for a term of six years, which would have expired by operation of law at the end of 1944. He assumed and discharged the duties of the office until June 1, 1942, when he prepared and caused to be transmitted to the Governor, then at Lubbock, Texas, his written resignation, effective at 4:00 o'clock P. M. of that day. The resignation was delivered to the Governor at 9:00 o'clock P. M. of the same day, but according to a statement of the Governor was not accepted then, nor at any other time. Due to the lateness of the hour when the Governor received the resignation, no publication of the receipt thereof by the Governor was made until the next day, June 2nd. Mr. Sadler was inducted into the United States Army June 6, 1942. Prior to his purported resignation, Sadler had informed Kilday, who was an assistant in the office of the Railroad Commission of the fact that he intended to resign, and that he would recommend that Kilday be appointed as his successor. As a result of this information, Kilday, at 4:40 P. M. on June 1, 1942, posted by registered mail addressed to the Chairman of the State Democratic Executive Committee to a formal application to have his name placed on the ballot as a candidate for nomination at the July, 1942, Democratic Primary to the office of Railroad Commissioner to fill the unexpired term of the said Sadler. Under the provisions of Article 3111, Revised Civil Statutes, 1925, hereinafter quoted, a request to have the name of any person affiliating with any party placed on the

official ballot for the general primary as a candidate for the nomination of such party for any State office was required to be filed not later than the first Monday in June, which in this instance was June 1st. Due to the lateness of the resignation of the said Sadler, and the consequent lack of publicity, no applicant other than James E. Kilday had a reasonable opportunity to make application to have his name placed on the ballot as a candidate for nomination to said office. No one actually filed for said place on or before June 1st other than the said Kilday. When the State Democratic Executive Committee met in regular meeting on June 8, 1942, a resolution was adopted in which it was recited that under the peculiar circumstances then existing the public interest and welfare required that all qualified members of the party so desiring should be given a reasonable opportunity to make application to have their names placed on the ballot as candidates for nomination to said office, and that in order to afford such opportunity all prospective applicants were given until midnight of June 11th in which to file for such office. Ten applicants other than Kilday filed their applications within such time. Kilday filed this suit to enjoin the State Democratic Executive Committee from placing any other name than his own on the ballot as a candidate for said nomination, and from certifying such names to the County Democratic Executive Committees. The district court, after a preliminary hearing of the facts, denied the temporary injunction prayed for by Kilday. The case was appealed to the Court of Civil Appeals, and that court has certified to this Court the following questions:

"1. Did the office of Railroad Commissioner become vacant from and after receipt by the Governor of Sadler's resignation, in the sense that the Governor could legally appoint a successor to serve until the next general election in this State?

"2. If the written resignation of Sadler did not create such vacancy did Sadler's subsequent induction into military service of the United States create such vacancy within the meaning of the law which authorizes the Governor to appoint a successor to fill said vacancy until the next general election?

"3. Did the facts that Kilday knew Sadler would and did tender his written resignation to the Governor on June 1st, 1942, effective at 4:00 o'clock P. M. of that day, that Sadler had requested the Governor to appoint Kilday as Sadler's suc-

cessor, that Kilday did not disclose information he had to any other person, but at 4:40 o'clock P. M. of that day posted by registered United States mail to the Chairman of the State Democratic Executive Committee his application to have his name placed on the official ballot as a candidate for said nomination, constitute such a legal fraud by Kilday as to preclude him from obtaining the equitable relief sought in this action?

"4. Did the State Democratic Executive Committee have authority, either by law, inherent power vested in it as such committee, or by party usage, to pass the resolution of June 8th, 1942, and to receive and accept thereafter, by virtue of said resolution, applications of candidates for nomination to the office of Railroad Commissioner at the July, 1942, Primary, between said date of June 8th and midnight of June 11th, 1942?"

Article 3111, Revised Civil Statutes, 1925, provides in part:

"The request to have the name of any person affiliating with any party placed on the official ballot for a general primary as a candidate for the nomination of such party for any State office shall be * * filed with the State chairman not later than the first Monday in June preceding such primary, and shall be considered filed if sent to such chairman at his post-office address by registered mail from any point in this State."

Mr. Kilday contends that this statute provides the exclusive method to be followed in order to secure the right to have one's name placed on the ballot for party nomination for a State office; that the office of Railroad Commissioner previously occupied by Mr. Sadler became vacant on or before the expiration of the first Monday in June (June 1st in this instance), and since he, Kilday, was the only one to file as a candidate for nomination to said office before the expiration of the first Monday in June, no one else is entitled to have his name placed on the ballot as a candidate for nomination by the Democratic Party. We are not in accord with this view.

It is apparent, we think, not only from the terms of Article 3111, but from the whole chapter of which it is a part, that the provisions of that Article, in so far as it fixes the final date for a candidate for party nomination for State office to file for a place on the ballot is intended to apply to candidates seeking party nomination for State offices, the terms of which

in the usual course of events expire by operation of law during the year in which the election is to be held, or in case the election is to fill an unexpired term, where the vacancy occurs long enough prior to the final date fixed therein to afford a reasonable opportunity for all prospective applicants to comply with the law. It is not intended to apply in unusual situations where there would not be a reasonable opportunity for candidates for such nominations to comply with the law. In the case at bar the resignation was not delivered to the Govenor, or otherwise made public, until 9:00 P. M. on the last day for an applicant to file for such nomination. Mr. Kilday was the only one who received information concerning the purported resignation in time to comply with the terms of the statute. If we should hold that the statute in question was applicable, Mr. Kilday's name is the only one that would be allowed to appear on the ballot as the candidate for such nomination, and as a consequence he would become the nominee of the party, without the party having a reasonable opportunity to make its own selection. In fact, such a construction of the statute would render it possible for one intending to resign from a State office to so time his resignation purposely as to create a situation that would exclude all possible applicants for such nomination, except those in his confidence, from having any opportunity to file as candidates for such nomination; and thus deny the party a fair opportunity to select for itself who should be its nominee. The only remedy that the party would have to protect itself under such circumstances would be by a "write in campaign," which, as is well known, is of no practical value in a state-wide election in a large State, such as ours. It would be unreasonable to hold that the Legislature had intended to render it impossible for the party to protect itself in such a situation. We hardly believe that the Legislature intended that the statute should be so construed. "Courts will not follow the letter of the statute when it leads away from the true intent and purpose of the Legislature and to conclusions inconsistent with the general purpose of the act." Edwards v. Morton, 92 Texas 152, 46 S. W. 792. In our opinion, the statute was not intended to apply where the vacancy in the office does not occur a sufficient time prior to the date fixed for filing for such nomination to give a reasonable opportunity for all prospective applicants to comply with the law.

■ Since the resignation in this instance did not occur at such time as to allow a reasonable opportunity to comply with the statute above referred to, and therefore the statute is in-

applicable, the question arises: Did the State Democratic Executive Committee have a right to adopt the resolution that it did, allowing all applicants until June 11th in which to file as candidates for such nomination? We have been unable to find any statute which prescribes the method to be followed by the party in selecting its nominees for such office under circumstances such as we have here. It appears to us, therefore, that the party is free to follow any other method in keeping with its usages and customs in selecting its nominee for such office, so long as it does not pursue a method expressly prohibited by law. Article 3165, Revised Civil Statutes, 1925, expressly provides that the executive committee may not select the nominee in such a case as we here have under consideration, but there is nothing in the statute which forbids the executive committee from adopting reasonable regulations by which the party itself may select its nominee. In the case of Brown v. Darden, 121 Texas 495, 50 S. W. (2d) 261, in discussing the authority of the party executive committee to fix the order in which candidates for nomination should appear on the ballot, this Court said:

"Whenever the Texas statutes undertakes to make regulations pertaining to party primaries, the state executive committee is almost universally treated as the supreme party authority, within the state, save when the party voters declare their wills through primary ballots or in conventions of themselves or of their delegates. Party usage recognizes no higher authority within the state prior to party primaries or conventions than the state executive committee. Therefore, were we convinced that there was no valid federal or state statute governing the nomination of Congressman at Large, we would uphold the power of the state executive committee to adopt the resolution of March 9th, in the exercise of its fair and reasonable discretion in such matters."

In the case of Love v. Buckner, 121 Texas 369, 49 S. W. (2d) 425, this Court, in discussing the authority of a political party to act through its executive committee in the handling of party affairs where such action was not expressly prohibited by law, said:

"We do not think it consistent with the history and usages of parties in this state nor with the course of our legislation to regard the respective parties of the state executive committee as denied all power over the party membership, conventions, and primaries, save where such power may be found to have

been expressly delegated by statute. On the contrary, the statutes recognize party organizations including the state committees, as the repositories of party power, which the Legislature has sought to control or regulate only so far as was deemed necessary for important governmental ends, such as purity of the ballot and integrity in the ascertainment and fulfillment of the party will as declared by its membership."

In the case of Gilmore v. Waples, 108 Texas 167, 188 S. W. 1037, this Court had under consideration the question of the right of the executive committee of a political party to select a nominee for Railroad Commissioner where the incumbent died after the party primary or before the general election had been held. While in that case the court held that the executive committee of the party could not make the nomination. Chief Justice Phillips used language that evidences a clear recognition of the right of the party itself to select such nominee. It was there said:

"If there is no provision of law interdicting the proposed action of the committee, no legal right of the plaintiff can be said to be threatened with impairment, and the case presents merely a party dispute which the courts will remit to the party forum.

\* \* \* \* \*

"The failure of the Legislature to provide any method for a nomination under the conditions created by the death of Mr. Williams does not mean that the Democratic party was without any authority to make a nomination for the office of Railroad Commissioner. In our opinion it has that authority. The mere failure of the Legislature to provide an available method does not defeat its right to make a nomination. The right exists and in our opinion might be exercised in any manner agreeable to party usage not expressly forbidden by law. The use of the executive committee as a method is expressly so forbidden, in our view, by Article 3173, and it can not, therefore, be availed of. But except as the executive committee is denied any power of nomination under the conditions presented, plainly the making of a nomination under such conditions is unregulated by any statute law, and it could, therefore, in our opinion, be made in accordance with the party law and agreeably to party usage."

■ The above authorities abundantly demonstrate that in the absence of a statute forbidding action by the State Democratic

Executive Committee, it, as the executive head of the party, has the right to prescribe reasonable rules by which the party may make nominations in cases not covered by the statutes. No one has questioned the reasonableness of the resolution adopted by the State Democratic Executive Committee, extending the time for filing for nomination for the office in question. We are of the opinion, therefore, that the State Democratic Executive Comimttee was well within its rights in extending the time in which applicants could file for places on the ballot for party nominations for the position in question, and that it has a right to certify and have placed on the ballot the names of all who comply with its regulations. We answer Question No. 4, "Yes."

In view of our answer to Question No. 4, it becomes unnecessary for us to answer any of the other questions certified by the Court of Civil Appeals. In discussing the issues here involved we have assumed for the purpose of the disposition of this case that a vacancy had occurred in the office in question. We have done so because all parties to this suit asserted that such vacancy had occurred. Obviously, if the office is not vacant, Mr. Kilday, who seeks the injunction in this instance, has no interest that will be injured by the State Democratic Executive Committee in allowing the names of the other candidates for such nomination to be placed on the ballot. On the other hand, if the office is vacant, then the Committee, as above held, had a right to fix the time for applicants to file for places on the ballot. Since Mr. Sadler is not a party to this suit, and his right to continue in office is not an issue in this case, we refrain from here deciding whether he has resigned from or abandoned the office. It is also unnecessary for us to determine whether the resignation, if any, occurred on June 1st, or after that date. In either event, it occurred too late for applicants to comply with the provisions of Article 3111.

On account of the emergency due to the near approach of the time for the printing of the ballots for the July Primary, the appellant will be denied the right to file a motion for rehearing. The Court's answer to the questions certified will be forwarded to the Court of Civil Appeals immediately.

Opinion delivered June 26, 1942.