David Joe **SCHEPPS** et al., Petitioners,

v.

**PRESBYTERIAN HOSPITAL OF DALLAS**, Respondent.

No. C–1591.

Supreme Court of Texas.

June 22, 1983.

Rehearing Denied July 20, 1983.

Carp & Eddleman, William R. Eddleman, Dallas, for petitioners.

Jackson, Walker, Winstead, Cantwell & Miller, C. Steven Matlock, Thompson & Knight, Richard E. Gray and Gerald H. Grissom, Dallas, for respondent.

KILGARLIN, Justice.

Two issues are presented by this case. Is the notice provision contained in the Medical Liability and Insurance Improvement Act,[1] which requires giving sixty days notice prior to filing suit, mandatory? If so, what is the appropriate remedy when a plaintiff fails to give notice?

Mr. and Mrs. Schepps filed this suit against Presbyterian Hospital of Dallas and Patterson S. Reaves, M.D., alleging their malpractice as to Robert Allen Schepps, the Schepps' sixteen-year old son.[2] Presbyterian Hospital and Dr. Reaves each moved for summary judgment, alleging that the Schepps failed to give at least sixty days notice prior to filing the suit. The trial court granted both motions and ordered that the Schepps take nothing. The court of appeals agreed that the notice provision was mandatory, but reversed on the basis that it was improper to render a take nothing judgment and instructed the trial court to dismiss the Schepps' cause. 638 S.W.2d 156. We affirm the judgment of the court of appeals insofar as it reverses the judgment of the district court. However, we reverse the judgment of the court of appeals with respect to the disposition ordered on remand.

On July 16, 1978, Robert Allen Schepps was involved in a motor vehicle accident in Dallas, Texas. He was taken by ambulance to Presbyterian Hospital where he was allegedly examined by Dr. Reaves. Some three hours later he was transferred to Parkland Memorial Hospital in Dallas. He died three days later. The Schepps filed their lawsuit on May 12, 1980. After the two year statute of limitations ran, Presbyterian Hospital and Dr. Reaves filed their motions for summary judgment. As stated, the district court granted the motions for summary judgment and ruled that the Schepps take nothing.

The sixty-day notice provision at issue in this case is contained in article 4590i, section 4.01, which reads as follows:

(a) Any person or his authorized agent asserting a health care liability claim shall give written notice of such claim by certified mail, return receipt requested, to each physician or health care provider against whom such claim is being made at least 60 days before the filing of a suit in any court of this state based upon a health care liability claim.

(b) In such pleadings as are subsequently filed in any court, each party shall state that it has fully complied with the provision of this section and shall provide such evidence thereof as the judge of the court may require to determine if the provisions of this Act have been met.

(c) Notice given as provided in this Act shall toll the applicable statute of limitations to and including a period of 75 days following the giving of the notice, and this tolling shall apply to all parties and potential parties.

(d) All parties shall be entitled to obtain complete and unaltered copies of the claimant's medical records from any other party within 10 days from the date of receipt of a written request for such records; provided, however, that the receipt of a medical authorization executed by the claimant herein shall be considered

---

1. Tex.Rev.Civ.Stat.Ann. art. 4590i § 4.01.

2. Likewise sued was James W. Cotter, M.D., who was non-suited by the Schepps.

compliance by the claimant with this section.

The Schepps argue that section 4.01 is merely directory rather than mandatory and that failure to comply with the notice provision should not result in the loss of their cause of action. They acknowledge that the word "shall" is used in the pertinent provision, but contend that the word should be treated as directory in application. *See Thomas v. Groebl,* 147 Tex. 70, 212 S.W.2d 625, 630 (1948). Presbyterian Hospital and Dr. Reaves argue that the word "shall" can only be construed in this case to be mandatory and, accordingly, failure to give notice is a bar to prosecution of this suit.

This Court stated the general guidelines for determining whether a statutory provision is mandatory or directory in *Chisholm v. Bewley Mills,* 155 Tex. 400, 287 S.W.2d 943 (1956):

> There is no absolute test by which it may be determined whether a statutory provision is mandatory or directory. The fundamental rule is to ascertain and give effect to the legislative intent. Although the word "shall" is generally construed to be mandatory, it may be and frequently is held to be merely directory. In determining whether the Legislature intended the particular provision to be mandatory or merely directory, consideration should be given to the entire act, its nature and object, and the consequences that would follow from each construction. Provisions which are not of the essence of the thing to be done, but which are included for the purpose of promoting the proper, orderly and prompt conduct of business, are not generally regarded as mandatory. If the statute directs, authorizes or commands an act to be done within a certain time, the absence of words restraining the doing thereof afterwards or stating the consequences of failure to act within the time specified, may be considered as a circumstance tending to support a directory construction.

*Id.* at 945.[3] Keeping these guidelines in mind, we turn to the legislative history behind article 4590i, section 4.01. We additionally note that section 4.01 is a notice statute in derogation of the common law and, therefore, is to be strictly construed. *City of Waco v. Roberts,* 121 Tex. 217, 48 S.W.2d 577 (1932).

In 1975, physicians and other health care providers asked the Legislature to address the problem of the spiraling cost of medical malpractice insurance. As a remedial measure the Legislature enacted the Professional Liability Insurance for Physicians, Podiatrists and Hospitals Act, which became codified as article 5.82 of the Texas Insurance Code. At the time of the adoption of article 5.82, the Legislature specifically provided that the measure would be temporary in nature by allowing it to expire by its own terms on December 31, 1977. However, with a goal toward creating long-term legislation to provide relief for physicians and other medical care providers, the Legislature created the Texas Medical Professional Liability Study Commission and directed it to make a report to the 65th session of the Texas Legislature, scheduled to convene in January, 1977. That Commission became commonly known as the Keeton Commission, adopting the name of its Chairman, former University of Texas Law School Dean, W. Page Keeton.

In its findings[4], the Keeton Commission stated that a large percentage of the malpractice claims filed proved to be unmerito-

---

**3.** In addition to *Chisholm v. Bewley Mills,* 155 Tex. 400, 287 S.W.2d 943 (1956), and *Thomas v. Groebl,* 147 Tex. 70, 212 S.W.2d 625 (1948), other holdings of this Court employing similar tests with similar results are *Lewis v. Jacksonville Building and Loan Assoc.,* 540 S.W.2d 307 (Tex.1976); *Kilday v. Germany,* 139 Tex. 380, 163 S.W.2d 184 (1942); *Markowsky v. Newman,* 134 Tex. 440, 136 S.W.2d 808 (1940); *Federal Crude Oil Co. v. Yount-Lee Oil Co.,* 122 Tex. 21, 52 S.W.2d 56 (1932), and *Hess and Skinner Engineering Co. v. Turney,* 109 Tex. 208, 203 S.W. 593 (1918).

**4.** Section 1.02(a)(13) of article 4590i, Texas Revised Civil Statutes Annotated (Medical Liability Insurance Improvement Act), explicitly states that the Legislature adopted the findings made by the Keeton Commission.

rious, and that the handling and processing of those claims involved cost. The Commission also recognized, however, that a claim was not irresponsible and malicious simply because it was not subsequently established to be meritorious. Therefore, the Commission recommended that a process be made available that would facilitate the early identification of unmeritorious suits.

The Commission proffered two suggestions in this regard: (1) a period of time prior to the filing of suit should be set aside for discussion between the parties, in order that an amicable agreement might be reached without the necessity for formal action; and (2) in the event a settlement was not reached, a mandatory screening panel should be established to review claims prior to the filing of suit. The report indicates that the Keeton Commission sought to eliminate frivolous and unjustified claims from being filed as lawsuits so malpractice carriers would not be called upon to expend large sums of money in defense of such suits, which of necessity would affect premiums paid by health care providers. It is significant to note that the sixty-day notice provision and the screening panel provision would constitute a combined program to weed out the unmeritorious claims.

Numerous bills were subsequently introduced in both houses to implement the Commission recommendations. The final House version, H.B. 1048, provided for both the sixty-day notice provision and the health care screening panel, as recommended by the Commission. The bill additionally contained "intent" language in the notice section which stated:

> It is the intention of this section that all parties attempt to dispose of a health care liability claim without the necessity of review by health care screening panel or the filing and pursuit of a lawsuit.

The final Senate version of H.B. 1048 completely removed the portion of the bill concerning the creation of screening panels and struck the "intent" language from the notice section. The House refused to concur in the Senate amendments and the bill was sent to conference committee. The conference committee accepted the Senate amendments with minor changes, which did not affect the elimination of screening panels or the intent language in the notice section. The conference committee report was enacted into law.

Certain conclusions can be drawn from this legislative history. First, the original notice provision was an attempt to provide for resolution of malpractice claims without the filing of suit. Senator Kent Hance of Lubbock County, in explaining his amendment that deleted the intent language from the notice section, noted that the bill "merely states that you would have to give notice to anyone before you file a lawsuit against them." Transcription, Senate proceedings, H.B. 1048, April 18, 1977. Second, the feature of the legislative proposal that might have best accomplished a resolution of malpractice claims was eliminated from the bill—the screening panel provision. We must conclude, therefore, that the Legislature in its final enactment upgraded the importance of the notice provision, for it remained as the only vehicle to encourage pre-suit negotiations.

Tending to support a directory interpretation is that medical malpractice laws enacted by other states at approximately the same time as the Texas act contain more explicit mandatory language. *See, e.g.,* Me. Rev.Stat.Ann. tit. 24 § 2903 ("No action … *shall be commenced*"); N.H.Rev.Stat. Ann. § 507–C:5 ("No action … *shall be commenced*"); Utah Code Ann. § 78–14–8 ("No malpractice action … *may be initiated*"); Va.Code § 8.01–581.2 ("No action *may be brought* for malpractice … unless the claimant notifies").[5] Additionally, we note that no bill, including the one finally adopted, ever contained any provision as to the consequences of failure to give sixty days notice prior to filing suit. This is

**5.** The Keeton Commission report indicates consideration of Utah and Virginia materials. It may be presumed that Senator Hance, who was a Commission member, was aware of the language in the notice sections of those states' statutes. His final amendment of the notice section of our statute made no effort to incorporate such clearly mandatory language.

significant because, as noted earlier, "the absence of words restraining the doing thereof afterwards or stating the consequences of failure to act within the time specified, may be considered as a circumstance tending to support a directory construction." *Chisholm v. Bewley Mills,* 155 Tex. at 403, 287 S.W.2d at 945.

■ Had section 4.01 contained only paragraph (a), we would be justified in concluding that the notice provision was merely directory. However, that section cannot be read in a vacuum. Paragraph (b) clearly evidences an intent upon the part of the Legislature that the giving of notice is mandatory. That paragraph contains two requirements: (1) an affirmative statement in the pleadings that there has been compliance with the notice provision, and (2) providing such evidence as the trial court may require as to proof of compliance. Had it not been the intent of the Legislature that the notice provision was mandatory, there would have been no need for the incorporation of paragraph (b) into the section. Accordingly, we conclude that the courts below were correct in construing the language of section 4.01 as being mandatory, and notice must be given at least sixty days before suit is filed.

In addition to the court of appeals in this cause, two other courts have written in an effort to interpret section 4.01 of article 4590i. *Wilborn v. University Hospital,* 642 S.W.2d 50 (Tex.App.—Amarillo 1982, no writ) followed the court of appeals holding in this cause and held that compliance with the notice requirement was mandatory and that the cause should be dismissed. Because of our decision in this case, we disapprove of the disposition made in *Wilborn. Burdett v. Methodist Hospital,* 484 F.Supp. 1338 (N.D.Tex.1980) reached a contrary conclusion, stating: "[I]f the Legislature had wanted to subject a suit to dismissal for failure to give the notice, the Legislature could, and likely would, have so said." *Id.* at 1341.

■ Having decided that "shall" is mandatory, there remains our disposition of this case. The court of appeals would bar further prosecution because notice was not properly given. We disagree. We would observe that article 4590i, sections 1.02(b) and 1.02(b)(3) state: "[I]t is the purpose of the Act to improve and modify the system by which health care liability claims are determined ... [and to] do so in a manner that will not unduly restrict a claimant's right anymore than necessary to deal with the crisis." We conclude that to bar prosecution for failure to give notice would constitute such an undue restriction of claimant's right. The intent of the Keeton Commission and the Legislature was to encourage pre-suit negotiations so as to avoid excessive cost of litigation. This likewise can be accomplished by requiring an abatement of the cause of action for a duration of sixty days in the event that plaintiff fails to give the required notice, and at the same time protect plaintiff's right to maintain that lawsuit. For these reasons we find no inconsistency in holding the provision mandatory, yet only subjecting the cause to abatement.

Accordingly, we hold that in any medical malpractice action subject to article 4590i, where a plaintiff has failed to give notice sixty days prior to the filing of suit, upon motion of the defendant, the cause should be abated for sixty days. This case is remanded to the trial court for disposition not inconsistent with this opinion.

POPE, C.J., dissents.

POPE, Chief Justice, dissenting.

I respectfully dissent. I dissent because the majority, while holding that the statutory requirement that a medical malpractice claimant must give notice "at least 60 days before the filing of suit," also holds that it is all right if he does not give notice "at least 60 days before the filing of suit." The statute means nothing, says the majority.

I agree with the majority holding that the Medical Liability and Insurance Improvement Act expressly requires sixty

days notice prior to filing suit. Tex.Rev. Civ.Stat.Ann. art. 4590i, § 4.01. I agree that the legislative history demonstrates an intent to reject those claims that are groundless and unmeritorious—those that are filed as nuisance suits that are costly and embarrassing to the medical provider. I agree that the Keeton Commission found that malpractice claims, and especially the nuisance claims, magnify the costs for all users of medical services.

I agree that it was the surplus of nuisance and embarrassment claims that generated the excessive malpractice and premium costs. I further agree that the legislature intended to eliminate needless court costs and litigation by weeding out some of the spurious claims by requiring the patient to notify the physician or health care provider sixty days before filing suit. The purpose of the act was to keep cases from reaching the stage of a lawsuit, with its process, discovery, mag-card and mimeographed multiple interrogatories, requests for admissions, and depositions. These procedures constitute the per-hour costs of present litigation, even in the instance of the spurious suit. It was this evil that article 4590i, section 4.01 purposed to eliminate.

The Texas Legislature was at first presented with a two-step mechanism as a means to eliminate spurious claims. The first was the notice provision contained in section 4.01. The second was the proposal for a mandatory screening panel. That panel had to act before a suit was filed. The legislature determined that the pre-suit notice would be sufficient to accomplish the purpose of weeding out the false, sham, and meretricious claims. Both provisions, however, contemplated notice before suit was filed.

I agree that the legislature in eliminating the second pre-suit step determined that only one step was necessary to achieve its purpose. It determined that the sixty-day pre-suit notice would afford an opportunity for consultation, mediation, and adjustment in many instances. I agree that the legislature in eliminating the two-step pre-suit requirement, determined that the sixty-day notice provision was enough and would accomplish its objective.

The legislature intended the avoidance of nuisance suits. They clog dockets, stand in the way of meritorious claims, and constitute that vast body of lawsuits that are on the docket but are not being pressed for trial. *See* J. Lieberman, *The Litigious Society* 3–5, 66–68 (1981).

The modest purpose of the legislature was to clear the dockets for those cases that have merit to their claims. The whole statute is frustrated when we permit the claimant to ignore the statute, file the suit, and then let the case take its course.

I would hold up the arm of the legislature and affirm the judgment of the court of appeals, which instructs the trial court to dismiss the suit.