**THE MOVING COMPANY, et al., Appellants,**

v.

**John C. WHITTEN and Susie Whitten, Appellees.**

**No. C14–85–780–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 7, 1986.

Rehearing Denied Sept. 18, 1986.

Robert Scott, Susan L. Bickley, Houston, for appellants.

Michael Phillips, Houston, for appellees.

Before DRAUGHN, MURPHY and EL-LIS, JJ.

## OPINION

DRAUGHN, Justice.

This is an appeal from a denial to set aside a post-answer default judgment and grant a new trial. We reverse and remand.

John and Susie Whitten sued The Moving Company, Accurate Moving & Storage Co., Lowell Douglas, R.H. McCool and Buddy Boek for damages resulting from services performed. The Whittens' contend that in the course of moving their possessions from Dallas to Houston, appellants damaged and lost much of their home furnishings and personal belongings. In their original petition, the Whittens prayed for relief under two theories of recovery, negligence and the Texas Deceptive Trade Practices Act. (DTPA) Appellants filed a general denial followed by an amended original answer raising several defenses including, but not limited to, noncompliance with DTPA notice procedures and lack of corporate status of the named corporate defendants. On June 21, 1985, during docket call

at which both parties were present, after a hearing on a discovery dispute, the trial court ordered the case set for trial on June 24, 1985. Appellants' failed to appear for trial at the designated time. The trial court entered judgment in favor of the Whittens. Actual damages were assessed at $36,024.71 and pursuant to the DTPA trebling provision, the Whittens were awarded $108,072.13 in exemplary damages plus attorney's fees. Appellants filed a motion to set aside the default judgment or alternatively, for new trial, which, after hearing, was overruled.

In their first point of error, appellants contend the trial court abused its discretion in denying their motion for new trial as they met the requirements of the *Craddock* test. We agree.

It is well established that a default judgment should be set aside and a new trial granted when: (1) the failure to appear was not intentional or due to conscious indifference, but due to an accident or mistake; (2) the motion sets up a meritorious defense; and (3) the granting of the motion will not delay or otherwise work an injury to the plaintiff. *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124 (1939). *See also Ivy v. Carrell*, 407 S.W.2d 212 (Tex.1966); *Lind v. Gresham*, 672 S.W.2d 20, 22 (Tex.App.—Houston [14th Dist.] 1984, no writ). It is equally well settled that it is within the discretion of the trial court to decide whether the facts of the case warrant the granting of a new trial. *Grissom v. Watson*, 704 S.W.2d 325 (Tex.1986).

## I. ACCIDENT OR MISTAKE

In reviewing the Whittens' brief we note they do not dispute that appellants' failure to appear for trial was the result of mistake. However, at oral argument, the Whittens stated they do not concede the issue. Therefore, we must carefully review the facts and circumstances before we are able to fairly characterize appellants' conduct.

We note at the outset that a review of the numerous appellate decisions applying *Craddock* reveals that no single formula for distinguishing accident or mistake from intentional failure or conscious indifference has been promulgated. *See generally* Pohl & Hittner, *Judgments By Default In Texas*, 37 S.W.L.J. 421, 443–47 (1983). It is clear, however, that the courts have liberally interpreted this element. *Harlen v. Pfeffer*, 693 S.W.2d 543, 545 (Tex.App.—San Antonio 1985, no writ). *See also Strackbein v. Prewitt*, 671 S.W.2d 37 (Tex. 1984).

The Whittens' filed their Original Petition on July 28, 1983. By November 1984, pre-trial discovery was complete except appellants had not had an opportunity to take photographs and inspect the Whittens' property allegedly damaged in the move. Several motions for continuances were granted at appellants' request as they continued to try and obtain access to the property. By order dated May 28, 1985, the trial court ruled appellants be given access to the property on or before five o'clock June 20, 1985, for the purpose of taking photographs. The Whittens attempted to avoid the ordered discovery by filing a Motion to Quash. The Motion was heard and denied. Meanwhile, appellants were still precluded from inspecting the property. On June 21, 1985, at docket call, appellants filed a Motion to Dismiss and the Whittens filed an "Arrangement for On-Site Inspection."[1] According to appellants, the trial court once again ordered the Whittens to allow appellants access to the property. The docket sheet indicates the court also ordered the case set for trial on June 24, 1985. Appellants state that after docket call, their counsel discussed the possibility of scheduling photographs both before and *after* June 24, 1985 with the Whittens' counsel, contributing to their mistaken belief trial was set for a date other than June

---

1. This motion does not appear in the transcript. The Whittens, however, have not disputed its existence. *See* Tex.R.Civ.P. 419.

24. Finally, the record shows that when appellants failed to appear for trial, court personnel did not attempt to contact appellants' counsel, believing he was aware of the trial setting.

Appellants' counsel learned of his mistake regarding the date of the trial setting when he received the default judgment signed June 25, 1985. On June 27, 1985, appellants' counsel obtained a hearing and an opportunity to explain his mistake. At the hearing, the trial judge indicated he was not inclined to set aside the default judgment, but he would consider a motion for new trial. Such was filed, alternatively styled as a Motion to Set Aside Default Judgment, and overruled. We find, in light of the particular series of events surrounding appellants' failure to appear for trial, such failure was not intentional or the result of conscious indifference.

## II. MERITORIOUS DEFENSE

We next address whether appellants have satisfied the second prong of *Craddock* by "setting up" a meritorious defense. A meritorious defense is one that, if proved, would cause a different result upon a retrial of the case, although it need not be a totally opposite result. *Harlen v. Pfeffer, supra* at 546. For example, in this case any defense to a portion of appellees' damages might produce the different result of a lesser amount of damages. *Gardner v. Jones,* 570 S.W.2d 198, 201 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ). Additionally, a defendant against whom a default judgment has been rendered need not conclusively *prove* a meritorious defense to be entitled to a new trial; he need only *"set up"* such a defense. *Aero Mayflower Transit Co., Inc. v. Spoljaric,* 669 S.W.2d 158 (Tex.App.—Fort Worth 1984, writ dism'd). The facts of the meritorious defense may be set forth by affidavit or other competent evidence. *Ivy v. Carrell, supra.*

In determining whether the defendant has "set up" a meritorious defense, only the legal sufficiency of the facts necessary to set up the defense may be contested by the plaintiff; the factual basis of defendant's meritorious defense may not. If the plaintiff can show the defendant has failed to allege facts supporting an element of its meritorious defense, then the motions may be properly overruled. In other words, once a meritorious defense has been set up, supported by evidence which prima facie entitles the defaulting defendant to a new trial, the new trial should not be denied upon consideration of contradictory testimony offered in resistance to the motion.[2] *Ivy v. Carrell, supra* at 214; *Harlen v. Pfeffer, supra* at 546; *National Rigging Inc. v. City of San Antonio,* 657 S.W.2d 171, 173 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). However, while the trial court may not consider contradictory evidence offered by the opposing party, the court should consider whether the facts asserted in the affidavits appear true and whether the affiant believes them to be true. *St. Paul Fire & Marines Ins. Co. v. Earnest,* 293 S.W. 677, 686–87 (Tex.Civ. App.—Amarillo) (on motion for rehearing), *aff'd in part per curiam,* 116 Tex. 565, 296 S.W. 1088 (1927). The facts of this case demonstrate the soundness of this latter principle.

A review of appellants' pleadings and affidavits raise the following defenses: (1) Accurate Moving & Storage Co. and The Moving Company are not corporations; (2) the individual defendants are not liable in the capacity in which sued; and (3) plaintiffs failed to comply with the DTPA notice provisions. If any one of these defenses qualifies as a "meritorious defense," the second prong of *Craddock* is satisfied.

## A. LACK OF CORPORATE STATUS AND INDIVIDUAL CAPACITY

The Whittens strenuously argue that the facts asserted by appellants in their sworn

---

**2.** It has been said that the defendant's burden of setting up a meritorious defense is much like that of one who opposes a motion for summary judgment. The trial court, in ruling on a motion to set aside a default judgment is confined to a determination of whether there is a fact issue to be tried. Pohl & Hittner, *supra* at 448.

affidavits concerning corporate status and individual capacity are controverted by appellants' own testimony obtained through pretrial discovery and introduced during the default judgment trial. They ask us to hold that a trial court does not abuse its discretion by overruling a motion for new trial following a default judgment where the only evidence of the meritorious defense is *completely* in conflict with the offering party's own sworn testimony. In order to fully appreciate the Whittens' argument, it is necessary to compare the affidavits attached to appellants' Motion for New Trial with their earlier sworn deposition testimony admitted into evidence.

For purposes of clarity, the relevant portion of the deponents' testimony will be immediately followed by excerpts from the same party's sworn affidavit attached to the Motion for New Trial.

## APPELLANT BUDDY BOEK

*Deposition Testimony*

Q. First, lets go to the question of August the 12th of 1981. Were you either a part owner or operator of Accurate Moving & Storage?

A. Yes. I was part owner.

. . . . .

Q. Was your ownership in the form of stock?

A. Yes.

Q. Approximately what percentage did you own in August of 1981?

A. Twenty-five.

. . . . .

*Affidavit*

. . . . .

I have never been the owner of or the operator of The Moving Company and/or Accurate Moving & Storage Co., although I am a stockholder in Moving Enterprises, Inc.

. . . . .

3. Although the year 1982 is used in this part of the testimony it is clear from the entire record

## APPELLANT R.H. McCOOL

*Deposition Testimony*

. . . . .

Q. Did you at one time own part of and help run Accurate Moving & Storage?

A. Yes.

. . . . .

Q. I've been told that you were the person who was the owner who was primarily in charge of the business in August of 1981. Is that true?

A. That's correct.

. . . . .

*Affidavit*

. . . . .

I have never been the owner of or the operator of The Moving Company and/or Accurate Moving & Storage Co. although I am an officer, director and stockholder in Moving Enterprises, Inc.

. . . . .

## APPELLANT LOWELL C. DOUGLAS

*Deposition Testimony*

Q. Did you in the past own or were you a part owner of The Moving Company?

A. Yes.

Q. Were you owner or part owner of Accurate Moving & Storage?

A. Uh—huh.

. . . . .

Q. When did you first purchase or become part owner in Accurate Moving & Storage?

A. On or about 1970.

Q. And I take it from what you're telling me that in 1982,[3] you were one of the part owners of the company.

A. In 1982, I was sole owner of the company. And then later, if I'm talking about the same year, I took on an additional partner.

Q. Okay. Are those additional partners Mr. McCool and Mr. Buddy Boek?

that the time period in controversy is 1981.

A. Right.

Q. Have you ever talked with the Whitten family in connection with a move that you did for them in 1982?

A. Yes.

Q. Did you ever submit a bill to the Whitten family for the move?

A. Certainly.

*Affidavit*

I have never been the owner or the operator of The Moving Company and/or Accurate Moving & Storage Co., although I am a stockholder in Moving Enterprises, Inc.

I have never been hired or retained by John C. Whitten or Susie Whitten to move household goods and property or to do anything else.

I did not move or attempt to move any of the property of John or Susie Whitten and I did not damage any of their property.

It should also be noted that, at the hearing on the Motion for New Trial, appellants themselves offered an assumed-name certificate which shows Lowell C. Douglas as president of a corporation, Moving Services, Inc. This corporation began doing business in November 1977 as Accurate Moving & Storage Co. On August 12, 1981 (coincidentally the day of the move in question in this lawsuit), Lowell C. Douglas, individually, and Moving Services, Inc., apparently sold the business to R.H. McCool and Moving Enterprises, Inc., who began doing business as Accurate Moving & Storage Co.

The issue presented is whether a defendant may satisfy the second prong of *Craddock*—the ability to set up a meritorious defense—by swearing to facts which directly and wholly controvert his earlier sworn testimony. We think that to rule favorably would make a hollow mockery of the *Craddock* test as well as impugn the integrity of the appellate process. Accordingly, we hold that a party-movant may not obtain a new trial following a default judgment when the only evidence of a meritorious defense is an affidavit alleging facts that do not appear true because they were specifically contradicted by the party's own prior sworn testimony which was introduced. Therefore, had appellants "set up" only the defense of lack of capacity, we would follow *St. Paul Fire*, hold that appellants had failed to satisfy the second prong of *Craddock*, and affirm the trial court's judgment. However, appellants' do not exclusively rely on lack of capacity as a defense.

## B. NONCOMPLIANCE WITH DTPA NOTICE PROCEDURES

As a further basis for satisfying the second prong of *Craddock*, appellants contend plaintiffs' failure to comply with the DTPA notice provision is a "meritorious defense" because if proved, the Whittens would be entitled to only actual rather than treble damages leading to a different, albeit not opposite, result upon retrial. *See Gardner v. Jones, supra.* We agree.

Prior to filing suit in July of 1983, the Whittens did not attempt to serve appellants with notice of their DTPA claim. In December 1983, appellants filed their First Amended Original Answer raising as a defense plaintiffs' failure to satisfy the DTPA notice provision. On April 15, 1985, after the case had been certified for trial, the Whittens moved for a plea in abatement to allow them time to properly serve notice. The plea was denied. At the brief trial conducted on the issue of damages, the Whittens' counsel testified he attempted to serve the individual appellants by certified mail. However, none of the appellants accepted the letters. The Whittens argue that although they may not have strictly complied with the Act, there can be no doubt that appellants had actual notice of their claim as evidenced by letters from

appellants' attorneys denying liability under the DTPA.

■ To maintain an action for damages under the DTPA, section 17.50A provides:

> As a *prerequisite* to filing a suit seeking damages ... against any person, a consumer shall give *written* notice to the person at least 30 days before filing the suit advising the person of the consumer's specific complaint and the amount of actual damages and expenses, including attorney's fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant. (emphasis added)

It could not be clearer that written notice is required by the statute and actual or oral notice is not a substitute. *See generally Brown Foundation & Repair & Consulting, Inc. v. McGuire*, 711 S.W.2d 349 (Tex.App.—Dallas 1986, no writ); *Terminix International, Inc. v. Lucci*, 670 S.W.2d 657 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.); *King v. Ladd*, 624 S.W.2d 195 (Tex.Civ.App.—El Paso 1981, no writ). Therefore, whether appellants' attorney or appellants had actual notice of the DTPA claim is not a relevant inquiry. Because appellants never received written notice of the DTPA claim in compliance with the clear language of § 17.50A, the Whittens cannot, as the judgment allows, recover treble damages. Consequently, we are compelled to hold that appellants have "set up" a meritorious defense within the meaning of *Craddock*.

The fact that a defendant successfully sets up a meritorious defense for purposes of satisfying *Craddock* is not dispositive upon retrial of the case. *Cragin v. Henderson County Oil Development Co.*, 280 S.W. 554, 556 (Tex.Comm'n App.1926, holding approved). Therefore, our decision should not be interpreted as foreclosing the possibility of DTPA damages upon retrial. The circumstances of this appeal, however, again raise the issue of how to interpret § 17.50A where the plaintiff neglects to give written notice to the defendant prior to filing suit.

The original DTPA statute provided that a plaintiff who failed to comply with the notice provision forfeited any claim to treble damages; actual damages could still be recovered. In 1979, the statute was amended and compliance with the notice provision prior to filing suit was made mandatory. Some commentators interpret the amendment as imposing a harsh sanction for noncompliance: suit is not maintainable. *See generally* Curry, *The 1979 Amendments to the Deceptive Trade Practices-Consumer Protection Act*, 32 Baylor L.Rev. 51, 68 (1980); Goodfriend & Lynn *Of White Knights and Black Knights: An Analysis of the 1979 Amendments to the Texas Deceptive Trade Practices Act*, 33 S.W.L.J. 941, 990 (1979). In our opinion, had the legislature intended such a harsh result, the statute should have spelled it out.

In 1983 the Texas Supreme Court was presented with a question of statutory construction arising from a similar notice provision in the Medical Liability and Insurance Improvement Act. *Schepps v. Presbyterian Hospital*, 652 S.W.2d 934 (Tex. 1983). The Medical Liability and Insurance Act provides that any party asserting a health care liability claim "shall give written notice of such claim ... to each physician or health care provider against whom such claim is being made *at least sixty days before the filing of a suit....*" Tex. Rev.Civ.Stat.Ann. art. 4590i, § 4.01(a) (Vernon Supp.1986) (emphasis added). In *Schepps*, the plaintiff failed to give the required notice. The trial court granted defendant's motion for summary judgment. The supreme court reversed holding that although the notice provision is mandatory, the legislative intent of encouraging presuit negotiations could be accomplished by abatement of the cause rather than dismissal. *Schepps, supra* at 938.

Subsequently, appellate courts confronted with DTPA plaintiffs who similarly neglect to give the defendants written notice have followed *Schepps* by holding that abatement rather than dismissal of the suit is proper. *See, e.g., Pool Co. v. Salt Grass*

*Exploration, Inc.,* 681 S.W.2d 216 (Tex. App.—Houston [1st Dist.] 1984, no writ); *Sunshine Datsun, Inc. v. Ramsey,* 680 S.W.2d 652 (Tex.App.—Amarillo 1984, no writ) (citing *Schepps v. Presbyterian Hospital,* 652 S.W.2d 934, 938 (Tex.1983)).

 After full consideration of the entire DTPA statute and the teachings of *Schepps,* we find ourselves in agreement with the other appellate courts that despite the mandatory nature of § 17.50A, where the consumer fails to give the required notice and the defendant objects to the failure, the legislative scheme of consumer protection is more reasonably effected by abatement of the filed suit. In the absence of a clear legislative sanction, we decline to enforce the harsh result of dismissal advocated by the commentators.

It follows that if on remand the Whittens intend to pursue the DTPA cause of action and the trial judge agrees, the only method by which this may be accomplished is through an abatement. Under the circumstances of this case only an abatement would preserve the integrity of the statute's mandatory notice provision and at the same time protect the consumer's cause of action thereunder.

### III. NO INJURY TO PLAINTIFF

The final *Craddock* requirement is that the granting of the motion for new trial will occasion no delay or otherwise work an injury to the plaintiff. Affidavits attached to appellants' Motion for New Trial show appellants have offered to reimburse the Whittens for attorney's fees and costs incurred in appearing for trial. Appellants have indicated they stand ready for trial. There has been no showing that a new trial would impose a hardship on the Whittens. *See generally Spencer v. Affleck & Co.,* 620 S.W.2d 831 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

 Finding that the three prongs of the *Craddock* test have been satisfied, we hold that the trial court abused its discretion in overruling appellants' Motion for New Trial and in refusing to set aside the default

judgment. In view of our dispostion of appellants' first point of error, it is unnecessary to consider their remaining contentions.

The judgment is reversed and the cause remanded for a new trial.