William P. GOTCHER, et ux., Appellants,

v.

James BARNETT, Appellee.

No. B14–87–020–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 23, 1988.

**400**

Robert D. Topping, Robert J. Kruckemeyer, Houston, for appellants.

Charles A. Brown, Carol L. Kessler, Pasadena, for appellee.

Before PAUL PRESSLER, MURPHY and ELLIS, JJ.

## OPINION

ELLIS, Justice.

This is an appeal from a default judgment entered against William P. and Brenda R. Gotcher, appellants, in favor of the appellee, James Barnett. In three "subpoints" to a single point of error, appellants argue the trial court abused its discretion in denying their motion for a new trial. We reverse and remand for a new trial.

Appellant William P. Gotcher, who served as president of Gulf States Yachts, Inc., entered into an agreement to sell Barnett the M/V Laur–Les, a 54 foot charter fishing vessel. Appellants formerly owned the Laur–Les, subject to a first preferred ship mortgage in favor of Delta Savings Association of East Texas ["Delta"]. On July 17, 1985, Barnett and Gotcher executed an agreement of purchase and sale and Barnett took possession of the vessel. Paragraph A of their "Difinitive [sic] Agreement" provided that Gotcher would sell the Laur–Les to Barnett on an "as is where is" basis, in exchange for $150,000 in cash plus a tract of land owned by Barnett. In order to pay off Delta's first mortgage lien, Gotcher planned to sell the land to a third party. When that party no longer wanted the land, a dispute arose over the legal effect of the parties' agreement. In the meantime Delta initiated federal foreclosure proceedings against the Laur–Les in the spring of 1986, whereupon the United States Marshall arrested the vessel. Barnett intervened in the foreclosure proceeding, asserting a lien for improvements he allegedly made to the vessel while it was in his possession.

In chronological sequence, the events surrounding this lawsuit are as follows. On May 30, 1986, Barnett filed this action against appellants and Gulf States Yachts, Inc. He sought damages and attorney's fees based on allegations of deceptive trade practices violating Tex.Bus. & Comm.Code § 17.41 *et seq.* (Vernon 1987) ["Texas Deceptive Trade Practices Act"], common law misrepresentation, and breach of contract. Appellants failed to answer, although duly served. On September 18, 1986, Barnett's company purchased the Laur–Les for $316,000 at the United States Marshall's foreclosure sale.

On September 22, 1986, the trial court dismissed Gulf States Yachts, Inc. from the lawsuit in response to Barnett's request. On September 25, 1986, the Harris County district clerk sent Gotcher a notice of partial dismissal which appellants concede

they received. On October 13, 1986, the trial court entered a default judgment which awarded Barnett $60,837.55 as damages, $5,000.00 in attorney's fees, and $179,512.00 as treble damages pursuant to the Deceptive Trade Practices Act. At the close of an evidentiary hearing on December 15, 1986, the court denied appellant's timely filed motion for a new trial to set aside the default judgment. On February 5, 1987, the court entered findings of fact and conclusions of law, which it amended on March 4, 1987.

The abuse of discretion standard governs the trial court's overruling appellants' motion for a new trial. *Cliff v. Huggins,* 724 S.W.2d 778, 778–79 (Tex.1987). This court will reverse the default judgment as an abuse of discretion and order a new trial if we conclude the appellants established: 1) their failure to answer was neither intentional nor the result of conscious indifference but rather due to accident or mistake; 2) their motion raised a meritorious defense; and that 3) granting a new trial would not result in injury to the prevailing plaintiff Barnett. *See Cliff v. Huggins,* 724 S.W.2d at 779; *Angelo v. Champion Restaurant Equipment Co.,* 713 S.W.2d 96, 97 (Tex.1986); *Strackbein v. Prewitt,* 671 S.W.2d 37, 38 (Tex.1984), all quoting *Craddock v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 393, 133 S.W.2d 124, 126 (Tex.Comm'n App.1939, opinion adopted). We conclude the trial court abused its discretion.

■ Cases construing *Craddock* establish no criterion for applying the first prong of its three part test: distinguishing an accidental or mistaken failure to answer from one that is intentional or the result of conscious indifference. *See* M. Pohl & D. Hittner, *Judgments by Default in Texas,* 37 S.W.L.J. 421, 443–47 (1983) [hereinafter "Pohl and Hittner"]. However, it is clear that courts have applied this prong liberally, and that each case depends on its own facts. *See The Moving Co. v. Whitten,* 717 S.W.2d 117, 119 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.), citing *Strackbein v. Prewitt,* 671 S.W.2d 37 (Tex.1984); 4 R. McDonald, TEXAS CIVIL PRACTICE IN DISTRICT & COUNTY COURTS § 18.10.1 at 304, § 18.10.2 at 307 (F. Elliot rev. ed. 1984) [hereinafter "4 MCDONALD"]. Since absence of a purposeful or bad faith failure to answer is the "controlling fact," *Craddock,* 134 Tex. at 392, 133 S.W.2d at 125, even a slight excuse will suffice, especially where delay or prejudice would not result. 4 McDONALD § 18.10.2 at 306; Pohl & Hittner, 37 S.W.L.J. at 443.

■ Texas courts have recently had difficulty construing the *Strackbein* court's application of the "conscious indifference" prong to cases where the defaulting defendant's excuse for failing to answer is controverted by the party who recovered the default judgment, as occurred in the case before us. *See generally,* A. Jackson & B. Eskew, *Default Judgments: Procedure(s) for Alleging or Controverting Facts on the Conscious Indifference Issue,* 40 BAYLOR L. REV. 59 (1988) [hereinafter "Jackson & Eskew"] (analyzing case law construing *Strackbein* ). If the factual allegations in the defaulting party's motion and affidavits would negate conscious indifference, and if the party who obtained the default judgment fails to controvert those allegations, *Strackbein* clearly requires a trial court to conclude the defaulting party's failure to answer was the result of mistake or accident. *Strackbein,* 671 S.W.2d at 38–39; *Holberg v. Short,* 731 S.W.2d 584, 586 (Tex.App.—Houston [14th Dist.] 1987, no writ); *Royal Zenith Corp. v. Martinez,* 695 S.W.2d 327, 329 (Tex.App.—Waco 1985, no writ). But when, as in the instant case, the trial court conducts an evidentiary hearing during which the party who obtained the default judgment controverts the defaulting defendant's allegations of mistake or accident, the trial court performs a different role. *See Strackbein,* 671 S.W.2d at 39; *Holberg,* 731 S.W.2d at 586–87 (citing *Strackbein* ); Jackson & Eskew, 40 BAYLOR L. REV. at 67. The trial court must then make an essentially factual inquiry into the acts and knowledge of the defaulting defendant to determine whether his failure to answer was intentional. *Id.* A conclusion that failure to answer was intentional must have support in the record and must be correct as a

matter of law. *See Strackbein*, 671 S.W.2d at 39; *Royal Zenith Corp. v. Martinez*, 695 S.W.2d at 329; Jackson & Eskew, 40 BAYLOR L. REV. at 67.

In their motion for a new trial and accompanying affidavits, appellants referred to settlement discussions with Barnett and Delta which led them to believe Barnett would dismiss this action. At the evidentiary hearing on appellants' motion, Gotcher testified he would have answered Barnett's petition but for those discussions, that he mistakenly assumed the notice of partial dismissal he received on September 22, 1986 was the dismissal he anticipated pursuant to those discussions, that he consulted an attorney immediately after he received notice of entry of the default judgment in favor of Barnett, and only then learned the significance of the court's having dismissed only his company from the suit. Barnett's response to appellants' motion did not controvert the foregoing excuse, although he denied agreeing to dismiss his lawsuit during the evidentiary hearing.

The trial court concluded that appellants' failure to answer was intentional as a matter of law. Its written findings of fact indicate only that appellants "were aware that only a PARTIAL DISMISSAL as to GULF STATES YACHTS had been granted" (emphasis in original). This was an abuse of discretion under the facts of this case.

■ In our opinion the trial court's findings recognize only appellant's *negligence* in failing to answer. Yet it is settled law in Texas that negligence alone will not preclude setting aside of a default judgment. *See Ivy v. Carrell*, 407 S.W.2d 212, 213 (Tex.1966); *Dallas Heating Co. v. Pardee*, 561 S.W.2d 16, 19 (Tex.Civ.App.—Dallas, writ ref'd n.r.e.); 4 MCDONALD § 18.10.2 at 306. By focusing only on appellants' negligence, the trial court failed to follow *Strackbein*, which required it to scrutinize the *acts* of the defaulting defendant when the prevailing party controverts the defaulting defendant's allegations of mistake or accident. 671 S.W.2d at 39. Here, the court's scrutiny of appellants'

acts is incomplete. As its findings and conclusions illustrate, the court failed to address the fact issue raised by the excuse appellants advanced and which Barnett disputed, their reliance on Barnett's having agreed to settle and dismiss this lawsuit.

Moreover, Texas courts have long recognized that an agreement to settle which failed to materialize can justify setting aside a default judgment, especially where the defaulting party takes immediate steps to set aside the default. *See Sedberry v. Jones*, 42 Tex. 10, 11–12 (1875), cited in Pohl & Hittner, 37 S.W.L.J. at 444; *see also, General Portland, Inc. v. Collins*, 549 S.W.2d 757, 759 (Tex.Civ.App. 1977, writ ref'd n.r.e.) (no conscious indifference where extended settlement negotiations had taken place). In *Sedberry*, counsel for the prevailing plaintiff denied having agreed to settle, just as Barnett did in the instant case. The supreme court ordered a new trial, indicating that the appellants' having immediately raised his allegations of an anticipated settlement sufficed. 42 Tex. at 11–12.

Here, appellants alleged Barnett had agreed to dismiss this lawsuit, that they sought legal advice immediately after being notified of entry of judgment, and only then learned the significance of the partial dismissal of the company. Based on *Sedberry*, and because *Strackbein* holds that the defendants' acts are controlling, the trial court's failure to address appellants' excuse amounts to an abuse of discretion under the particular facts of this case. Because Texas courts apply the first prong of the *Craddock* test liberally, taking each case on its own merits, we hold the trial court should have concluded the appellants' failure to answer resulted from their somewhat cavalier but nonetheless mistaken reliance on Barnett. Neither appellants' motion for a new trial nor Gotcher's testimony during the evidentiary hearing suggests purposefully indifferent conduct by appellants.

■ Similarly, the trial court abused its discretion in applying the second prong of the *Craddock* test when it concluded the facts appellants alleged in their motion for

a new trial did not constitute a meritorious defense to Barnett's cause of action. In order to satisfy *Craddock's* "meritorious defense" prong, the defaulting party need only assert, but need not prove, facts, which, if they were true, would produce a different result on retrial of the case, though not necessarily an opposite result. *Ivy v. Carrell*, 407 S.W.2d at 214; *The Moving Co.*, 717 S.W.2d at 120. This standard permits the party who recovered the default judgment to establish the lack of legal sufficiency supporting the defaulting party's claimed defenses, but forbids him to otherwise controvert or negate those defenses. *Id.; Dallas Heating Co. v. Pardee*, 561 S.W.2d at 20. Thus, the trial court may not base its refusal to grant a new trial on the merits of the defaulting party's alleged defenses. *Ivy v. Carrell*, 407 S.W.2d at 214; *Cragin v. Henderson County Development Co.*, 280 S.W. 554, 555 (Tex. Comm'n App.1926, holding approved). Appellants' motion for a new trial and affidavits raised several defenses. Appellants will have satisfied *Craddock's* second prong if any one of their defenses qualifies as meritorious. *The Moving Co.*, 717 S.W.2d at 120.

Barnett's petition alleged appellants violated the Texas Deceptive Trade Practices Act in part by tracking the language of Tex.Bus. & Comm.Code § 17.46(b)(12) & (23) (Vernon 1987), respectively. Generally, § 17.46(b)(12) proscribes representing that an agreement confers rights which it does not, while § 17.46(b)(23) proscribes purposefully failing to disclose known information concerning goods or services. The trial court awarded Barnett $179,512.00 as treble damages pursuant to the Texas Deceptive Trade Practices Act, without specifying the theory of relief.

■ The parties' agreement, which appellants included as an exhibit to their motion and affidavits, provided that appellants were to sell the Laur–Les to Barnett on an "as is where is" basis. During the evidentiary hearing, Gotcher testified he made no additional representations to Barnett concerning the vessel. We hold the "as is where is" provision of the agreement, together with the assertion that no other representations were made, sufficiently set forth a meritorious defense to either of Barnett's § 17.46(b) claims.

■ Barnett's petition also alleged appellants violated the Texas Deceptive Trade Practices Act by failing to place $31,000 "into escrow" as the agreement required. By including a copy of the parties' agreement, appellants' motion and affidavits raised a meritorious defense to Barnett's "failure to escrow" allegations. Paragraph C of the parties' agreement recited only that Barnett had given Gotcher a $31,000 deposit, and that if the sale failed to close for any reason, Gotcher would retain $10,000 and refund the remainder to Barnett. Moreover, during the evidentiary hearing, Gotcher testified he never agreed to "escrow" the $31,000, and that the $10,000 figure represented the value of Barnett's using the Laur–Les for a fishing tournament. The foregoing facts, if true, would constitute meritorious defenses to Barnett's allegation that appellants failed to escrow and therefore violated the Texas Deceptive Trade Practices Act.

■ Barnett based his misrepresentation claim on the existence of liens against the vessel as they affected appellants' ability to convey clear title. Appellants' motion and affidavits acknowledged the need to convey clear title to Barnett. During the evidentiary hearing Barnett admitted Gotcher disclosed Delta's first preferred ship mortgage lien when the parties first began negotiating for the vessel. Gotcher acknowledged he created another lien against the vessel, but twice testified that the second lienor released its lien. Also in their motion, as well as during the evidentiary hearing, appellants argued that both parties contemplated the sale might never materialize, based on their including the clause "[i]f for any reason the purchase and sale ... does not close ..." in Paragraph C of their agreement. Barnett's awareness of Delta's lien, and Gotcher's alleging the second lien was released, together with appellants' assertion that both parties contemplated their purported agreement might fail to close, sufficiently raised

a meritorious defense to Barnett's misrepresentation cause of action.

 Barnett's petition based his $55,000 damages claim on his having given appellants $31,000 as part of the purchase price, and having made necessary repairs to the Laur–Les. Appellants' motion and affidavits refuted the damages claim by asserting that because the Laur–Les had a reasonable rental value of $20,000 per month, and because Barnett had possession of the vessel for over nine months, his possession of the vessel more than offset his damages. Appellants' motion and affidavits also suggested that Barnett's stripping the vessel of $200,000 of equipment and damaging it to the extent of $50,000, resulted in his being able to purchase it advantageously at the federal foreclosure sale. Gotcher further disputed Barnett's damages during the evidentiary hearing by noting that the sale was on an "as is where is" basis, and denying the need for the repairs Barnett allegedly made. Because any of the foregoing allegations, if true, would result in a diminution of Barnett's damages on retrial of the case, they raised meritorious defenses. *See The Moving Co.*, 717 S.W.2d at 120.

Because appellants raised competent evidence of meritorious defenses to Barnett's theories of recovery as well as his damages, we hold the trial court abused its discretion when it concluded appellants had failed to raise a meritorious defense. In addition, we conclude the trial court improperly considered the merits of the defenses appellants raised when it overruled their motion for a new trial. To do so contravenes established precedent and amounts to an abuse of discretion. *Ivy v. Carrell*, 407 S.W.2d at 214; *Cragin*, 280 S.W. at 555; *The Moving Co.*, 717 S.W.2d at 120.

 Lastly, the trial court abused its discretion in applying the third prong of the *Craddock* test when it concluded Barnett would be delayed and prejudiced by granting a new trial. Appellants' motion and accompanying affidavits, as well as Gotcher's testimony, attested both to their readiness to proceed as soon as a trial could be properly set, and their willingness to reimburse Barnett for the costs he incurred in taking the default. In addition, there is nothing to show that granting a new trial would prejudice Barnett. Accordingly, the trial court erroneously concluded the appellants failed to satisfy *Craddock's* third prong. *See Angelo*, 713 S.W.2d at 98, *The Moving Co.*, 717 S.W.2d at 124, *Dallas Heating Co.*, 561 S.W.2d at 22.

Because we conclude that appellants satisfied all three prongs of the *Craddock* test, we hold the trial court abused its discretion when it overruled their motion for a new trial. Accordingly, we sustain appellant's point of error.

The judgment of the trial court is reversed and the cause remanded for a new trial.