

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00468-CV

_____

CRANE SURGICAL SERVICES, P.A. D/B/A CRANE CENTER FOR
TRANSGENDER SURGERY, RICHARD SANTUCCI, AND ASHLEY DELEON,
Appellants

V.

SOREN ALDACO, Appellee

On Appeal from the 67th District Court
Tarrant County, Texas
Trial Court No. 067-343803-23

Before Sudderth, C.J.; Birdwell and Womack, JJ.
Memorandum Opinion by Chief Justice Sudderth

**MEMORANDUM OPINION**

This interlocutory appeal turns on a single question: Can a medical malpractice plaintiff, by modifying her statutorily required authorization form, invoke the option to abate under Section 74.052(b) of the Civil Practice and Remedies Code and thereby toll her statutory deadline to file an expert report? *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.052(b), .351; *see also id.* § 51.014(a)(9). The trial court answered yes, but because the answer is no, Appellee Soren Aldaco's expert report was untimely, and the trial court was required to dismiss her claims against Appellants Crane Surgical Services, P.A., Richard Santucci, M.D., and Ashley DeLeon, M.D. (collectively, the Crane Parties). *See id.* § 74.351(b). We will reverse and remand.

## I. Background

Aldaco's lawsuit stems from a "gender-affirming" surgery that she now regrets.[1] Dr. DeLeon performed the surgery at a facility operated by Crane Surgical Services, and Dr. Santucci provided post-surgical care. Aldaco filed her health care liability claims against the Crane Parties in 2023, and the Crane Parties filed separate answers between September 5 and 20 of that year.

Not long thereafter, Aldaco served the Crane Parties with an amended medical authorization form. She then moved for a 60-day abatement of her claims under

---

[1]*See Aldaco v. Wood*, No. 02-24-00217-CV, 2024 WL 4849743, at *1–6 (Tex. App.—Fort Worth Nov. 21, 2024, pet. filed) (mem. op.) (reviewing related appeal from severed summary judgment order).

Section 74.052(b) of the Civil Practice and Remedies Code,[2] reasoning that the Crane Parties were statutorily entitled to an abatement due to her modified authorization form. None of the Crane Parties responded or agreed to Aldaco's motion to abate.

Nonetheless, on September 27, 2023, the trial court granted Aldaco's motion and abated the case for 60 days.[3] In its abatement order, the trial court noted that Aldaco had requested the abatement under Section 74.052(b); it "acknowledge[d] that [Aldaco] ha[d] effected service of [a] modified authorization form[] and that such modification entitle[d the Crane Parties] to a sixty-day abatement under the statute"; and it granted the abatement on that basis.[4] *See id.* § 74.052(b). The abatement ended in late November 2023.

---

[2]A defendant unrelated to this appeal had requested an abatement of the claims against him because he claimed he had not received Aldaco's presuit notice or authorization form. Aldaco acknowledged that the lapse was possible, and she took the opportunity to amend her authorization form and serve the updated form on all defendants.

[3]Section 74.052(b) contemplates an abatement "until 60 days following receipt of a replacement authorization," Tex. Civ. Prac. & Rem. Code Ann. § 74.052(b), but the trial court's order abated the case until "sixty (60) days following the date of th[e] order." This discrepancy is immaterial to the issues on appeal, and none of the parties raise it.

[4]The abatement order stated, in its entirety:

Several months later, on March 1, 2024, Aldaco served the Crane Parties with an expert report.[5] The Crane Parties responded by moving for dismissal of Aldaco's claims against them,[6] arguing that Aldaco's report had been due 120 days after they filed their answers and that because Aldaco had not served her expert report until more than 160 days after each of their answers, the report was untimely.[7] *See id.* § 74.351(a). Aldaco disagreed, claiming her report was timely. According to her, the Section 74.052(b) abatement tolled the 120-day expert-report deadline for an

---

On this day, the Court considered Plaintiff's Motion to Abate for All Defendants (the "Motion") under Tex. Civ. Prac. & Rem. Code Ann. § 74.052(b), in which Plaintiff requests a sixty-day abatement of this cause due to Plaintiff's modification of the Plaintiff's Chapter 74 authorization form. The Court, after considering the Motion and the evidence supporting same, acknowledges that Plaintiff has effected service of the modified authorization form, and that such modification entitles Defendants to a sixty-day abatement under the statute.

It is therefore ordered that Plaintiff's Motion to Abate for All Defendants is granted.

It is further ordered that this cause shall be in abatement for a period of sixty (60) days following the date of this order. [Capitalization altered.]

[5]Although Aldaco served more than one expert report, just one addressed her claims against the Crane Parties.

[6]The Crane Parties also objected to the report's sufficiency, and they reurge those complaints on appeal. Because the report was untimely, though, we need not address the sufficiency challenges. *See* Tex. R. App. P. 47.1.

[7]The Crane Parties' dismissal motion also sought sanctions against Aldaco, but on appeal, they do not challenge the denial of sanctions.

4

additional 60 days, and she had served her expert report less than 180 days after each of the Crane Parties' answers. The trial court implicitly agreed with Aldaco by denying the Crane Parties' motion to dismiss.

## II. Standard of Review

Generally, when reviewing a trial court's denial of a motion to dismiss a health care liability claim, we apply an abuse of discretion standard. *Pepper v. Wilson*, No. 02-22-00107-CV, 2023 WL 2534626, at *5 (Tex. App.—Fort Worth Mar. 16, 2023, pet. denied) (mem. op.); *Goetsch v. Rolls*, No. 02-20-00263-CV, 2021 WL 733090, at *2 (Tex. App.—Fort Worth Feb. 25, 2021, pet. denied) (mem. op.). But a trial court "has no discretion in determining what the law is." *In re Jorden*, 249 S.W.3d 416, 424 (Tex. 2008) (orig. proceeding); *see Gulf Coast Med. Ctr., LLC v. Temple*, No. 13-09-00350-CV, 2010 WL 196972, at *2 (Tex. App.—Corpus Christi–Edinburg Jan. 21, 2010, no pet.) (mem. op.) (reiterating and applying rule in review of abatement's effect on expert-report deadline). We thus apply a de novo standard to questions of law imbedded within the trial court's dismissal ruling. *Pepper*, 2023 WL 2534626, at *5 (noting further that "[w]hether the trial court may permit the plaintiff additional time beyond the 120-day deadline is a legal question" (quoting *Miller v. Castleman*, No. 13-21-00334-CV, 2022 WL 16642121, at *3 (Tex. App.—Corpus Christi–Edinburg Nov. 3, 2022, no pet.) (mem. op.)); *see Floeck v. Crescent Continuing Care Ctr. Co.*, No. 14-21-00101-CV, 2022 WL 1463767, at *3 (Tex. App.—Houston [14th Dist.] May 10, 2022,

5

no pet.) (mem. op.) (applying de novo standard to matters of statutory interpretation in review of abatement's effect on expert-report deadline).

### III. Governing Law

The Medical Liability Act (MLA) establishes several procedural requirements for health care liability claims. *See, e.g.*, Tex. Civ. Prac. & Rem. Code Ann. §§ 74.051–52, .351–53. Two of those requirements—and the corresponding consequences of noncompliance—are relevant here.

### A. Medical-Authorization-Form Requirement

First, at least 60 days before a plaintiff files her health care liability claim against a physician or health care provider, the plaintiff must serve the defendant with not only notice of her claim but also a medical authorization form. *See id.* §§ 74.051–.052. "The Legislature intended that[,] 'by requiring a potential claimant to authorize the disclosure of otherwise privileged information sixty days before suit is filed, the statute [would] provide[] an opportunity for health care providers to investigate claims and possibly settle those with merit at an early stage.'" *Jose Carreras, M.D., P.A. v. Marroquin*, 339 S.W.3d 68, 73 (Tex. 2011) (quoting *In re Collins*, 286 S.W.3d 911, 916–17 (Tex. 2009) (orig. proceeding), discussing authorization form in limitations context, and commenting that "[i]f an authorization form is not provided pre-suit, the pre-suit negotiation period triggered by the notice requirement would become meaningless").

If a plaintiff fails to provide the medical authorization form and proceeds to file suit, then under Section 74.052(a) of the MLA, the plaintiff's "[f]ailure . . . shall

abate all further proceedings against the physician or health care provider receiving the notice until 60 days following receipt by the physician or health care provider of the required authorization." Tex. Civ. Prac. & Rem. Code Ann. § 74.052(a). Similarly, if "the authorization [form] . . . is modified or revoked" after its initial provision, then under Section 74.052(b), "the physician or health care provider to whom the authorization has been given shall have the option to abate all further proceedings until 60 days following receipt of a replacement authorization that . . . compl[ies] with the [statutory] form." *Id.* § 74.052(b).

## B.    Expert-Report Requirement

In addition to the medical-authorization-form requirement, a plaintiff must, "not later than the 120th day after the date each defendant's original answer is filed . . . serve on that party . . . one or more expert reports." *Id.* § 74.351(a). If the report is not timely served, then the trial court "shall," upon motion of the defendant, (1) dismiss the plaintiff's claims against that defendant with prejudice and (2) award the defendant reasonable attorney's fees and costs. *Id.* § 74.351(b); *see Ogletree v. Matthews*, 262 S.W.3d 316, 319 (Tex. 2007).

This 120-day deadline is "strict"; it is not easily moved. *Ogletree*, 262 S.W.3d at 319–20 (noting that 2003 MLA amendments removed trial court's discretion to grant good-cause extension and acknowledging that the "strict 120 day deadline can lead to seemingly harsh results"). Generally, the sole means of extending the deadline is by written agreement of the parties. *Badiga v. Lopez*, 274 S.W.3d 681, 684–85 (Tex. 2009)

7

(clarifying that "[t]he trial court may grant an extension in only two circumstances: (1) by written agreement of the parties or (2) [when an initial report has already been served,] to allow a claimant to cure a report's deficiencies"); *Mokkala v. Mead*, 178 S.W.3d 66, 76 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) ("[T]he only means for a plaintiff to extend the 120–day deadline for serving an expert report is by agreement of the affected parties."). Absent an agreement, courts have recognized a mere handful of instances in which the deadline is tolled or otherwise delayed, with most of those instances stemming from a fundamental shift in the status of the case, such as a nonsuit, a later-reversed final judgment, or an insolvency-related stay. *See, e.g.*, *CHCA Woman's Hosp., L.P. v. Lidji*, 403 S.W.3d 228, 234 (Tex. 2013) (holding that "the expert-report period [wa]s tolled between the date nonsuit was taken and the date the new lawsuit [wa]s filed"); *Goetsch*, 2021 WL 733090, at *2–5 (holding that statutory, insolvency-related automatic stay tolled the expert-report deadline based in part on stay's express application "to each party to the proceeding" and "for all purposes"); *Drake v. Walker*, 529 S.W.3d 516, 527 (Tex. App.—Dallas 2017, no pet.) (holding that expert-report deadline was tolled while erroneous judgment was appealed and reversed); *see also Pepper*, 2023 WL 2534626, at *8–11 (holding that COVID-related emergency order from Texas Supreme Court authorized trial court to extend expert-report deadline).

Otherwise, the deadline remains fixed. Even when the claims against the provider are abated based on the plaintiff's failure to provide a medical authorization

8

form, the expert-report deadline is not tolled. *Shaikh v. Plaza Med. Ctr. of Fort Worth*, No. 2-06-226-CV, 2007 WL 3208592, at *2 (Tex. App.—Fort Worth Nov. 1, 2007, no pet.) (per curiam) (mem. op.) ("We hold that the trial court's abatement of this case for failure to give the required notice under [S]ection 74.052 did not extend the time for appellant to serve her expert report under [S]ection 74.351."); *see Floeck*, 2022 WL 1463767, at *3 (similar); *Gulf Coast Med. Ctr.*, 2010 WL 196972, at *4–6 (similar); *Est. of Regis ex rel. McWashington v. Harris Cnty. Hosp. Dist.*, 208 S.W.3d 64, 69 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (similar).[8] Nor does the failure of a defendant to fulfill its obligation to provide medical records toll or extend the deadline. *See White v. Willenborg*, No. 02-10-00272-CV, 2011 WL 678711, at *1 (Tex. App.—Fort Worth Feb. 24, 2011, no pet.) (mem. op.) (holding trial court did not abuse its discretion by denying extension based on provider's alleged failure to provide medical records); *see also Sutker v. Simmons*, No. 05-18-00698-CV, 2019 WL 3001034, at *4 (Tex. App.—Dallas July 10, 2019, pet. denied) (mem. op.) ("A defendant health care provider's failure to provide medical records requested under [S]ection 74.051 does not toll the 120-day expert report deadline."); *Ramirez v. Doctors Hosp. at Renaissance, Ltd.*, 336 S.W.3d 352, 354 (Tex. App.—Corpus Christi–Edinburg 2011, no pet.) (similar); *Garza v. Saenz*, No. 13-09-00111-CV, 2010 WL 746712, at *2 (Tex. App.—Corpus Christi–

---

[8] *See also Moseley v. Behringer*, 184 S.W.3d 829, 831–35 (Tex. App.—Fort Worth 2006, no pet.) (applying MLA's predecessor statute, noting but not addressing merits of plaintiff's trial court argument that unexplained 75-day abatement tolled expert-report deadline, and ultimately recognizing expert report as untimely).

Edinburg Mar. 4, 2010, no pet.) (mem. op.) (similar). And even in the face of good cause for an extension, a trial court simply lacks the discretion to delay the deadline. *Ogletree*, 262 S.W.3d at 319–21 (noting that 2003 amendments removed discretionary good-cause extension); *Goetsch*, 2021 WL 733090, at *5 ("Section 74.351 implicitly does not allow trial-court extensions of the expert-report deadline, only extensions by party agreement."); *see, e.g.*, *Lowe v. Jefferson Dental Clinics*, No. 05-11-00902-CV, 2012 WL 1669824, at *3 (Tex. App.—Dallas May 14, 2012, no pet.) (mem. op.) ("[T]he trial court had no discretion to extend the time for serving the report based on [the plaintiff's] amendment of her original petition."); *Thoyakulathu v. Brennan*, 192 S.W.3d 849, 850–54 (Tex. App.—Texarkana 2006, no pet.) (holding trial court lacked discretion to grant extension when plaintiff filed expert report but facsimile issue prevented service before deadline).

## IV. Effect of Abatement

It is undisputed that Aldaco served an expert report on the Crane Parties more than 120 but less than 180 days after each of their answers, meaning that her expert report was timely if the 60-day abatement tolled or extended her expert-report deadline, but it was untimely if the abatement did not. In the Crane Parties' dispositive first issue, they argue that because the Section 74.052(b) abatement did not toll the expert-report deadline, Aldaco's report was untimely, and the trial court erred by denying their motion to dismiss. Aldaco argues to the contrary, i.e., that her expert report was timely because the abatement tolled the deadline. But rather than

10

defending her position under Section 74.052(b)—the abatement statute that both she and the trial court relied upon below—Aldaco now argues that the statute is inapplicable.

In one sense, Section 74.052(b) is indeed inapplicable. When a medical authorization form is "modified or revoked," Section 74.052(b) gives "the option to abate all further proceedings" to the "physician or health care provider." Tex. Civ. Prac. & Rem. Code Ann. § 74.052(b). But here the "physician or health care provider" did not request the abatement; Aldaco did, and the statute does not confer upon the plaintiff an abatement option. Thus, despite Aldaco's and the trial court's reliance on Section 74.052(b) below, that statute did not provide a valid legal basis for the abatement.

Nonetheless, we cannot jettison Section 74.052(b) so quickly. Aldaco's motion sought an abatement equivalent to that authorized by this statute. Likewise, the trial court's abatement order, by purporting to grant relief under Section 74.052(b), expressly contemplated an abatement of corresponding purpose, scope, and effect. The order "considered [Aldaco's motion] under Tex. Civ. Prac. & Rem. Code Ann. § 74.052(b)," it found that Aldaco's "modification [of her form] entitle[d the Crane Parties] to a sixty-day abatement under the statute," and it "therefore ordered" and "granted" the requested Section 74.052(b) abatement. [Capitalization altered.] *See id.* § 74.052(b). And a Section 74.052(b) abatement does not toll the expert-report deadline.

11

We explained why in *Shaikh*. 2007 WL 3208592, at *1–2. There, Shaikh sued a health care provider but failed to serve the provider with a medical authorization form. *Id.* at *1. The provider filed a plea in abatement on that basis, and the trial court granted it, abating the case until 60 days after the provider received the form.[9] *Id.* Shaikh's expert-report deadline expired while the abatement was still in effect, but she did not serve the provider with an expert report until after the abatement had ended. *Id.* at *1 & n.4. The trial court thus dismissed Shaikh's claims due to the report's untimeliness, and on appeal, Shaikh argued—as Aldaco does here—that the abatement had "suspend[ed]" her expert-report deadline. *Id.* at *1–2.

We rejected this argument, explaining that, "[i]f an abatement for failure to give the required notice [including the medical authorization form] under the [MLA] automatically extend[ed] the deadline for filing the medical expert report, a plaintiff would in fact be rewarded with additional time for the filing of h[er] report by h[er] failure to comply with the statutory notice [and form] requirement[s]." *Id.* (quoting

---

[9]Both parties refer to a Section 74.052(a) abatement as "automatic." *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.052(a) (providing that the "[f]ailure to provide th[e] authorization . . . shall abate all further proceedings"). *But see Marsh v. Haldankar*, No. 14-21-00049-CV, 2022 WL 4962523, at *2–4 (Tex. App.—Houston [14th Dist.] Oct. 4, 2022, no pet.) (mem. op.) (rejecting argument that Section 74.052(a) abatement was automatic). We need not weigh in on that characterization; either way, the trial court in *Shaikh* issued an abatement order under Section 74.052(a). 2007 WL 3208592, at *1.

*Hagedorn v. Tisdale*,[10] 73 S.W.3d 341, 348 (Tex. App.—Amarillo 2002, no pet.)). The provider, meanwhile, would be forced to "choose whether to seek an abatement for the failure of the plaintiff to give [it] the statutorily required 60-day notice or to hold the plaintiff to the statutorily required deadline for filing the expert report." *Id.* (quoting *Hagedorn*, 73 S.W.3d at 348).

Although *Shaikh* involved a complete lack of medical authorization form—a Section 74.052(a) abatement—rather than a faulty medical authorization form—a Section 74.052(b) abatement—nothing in the MLA's text supports distinguishing between the two reasons for abatements, in either scope or effect. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.052, .351. *Shaikh*'s reasoning applies to both. "[O]nly a form that turns out to have been erroneous or incomplete in some respect would need to be modified," *Hampton v. Thome*, 687 S.W.3d 496, 503 (Tex. 2024) (discussing form in limitations context), and without an accurate and complete form, "the pre-suit

___

[10]*Hagedorn* was decided before the 2003 amendments to the MLA, and the relevant portion of the predecessor statute did not expressly provide for a form-related abatement. *See* Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 1, sec. 4.01, 1977 Tex. Gen. Laws 2039, 2047–48 (previously codified at Tex. Rev. Civ. Stat. art. 4509i, § 4.01, establishing pre-suit notice requirement and allowing plaintiff to satisfy compliance by providing authorization form), *amended and recodified by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 866–68; *see also Methodist Healthcare Sys. of San Antonio, Ltd., L.L.P. v. Rankin*, 307 S.W.3d 283, 287 (Tex. 2010) (referring to 2003 amendments as "a top-to-bottom overhaul of Texas malpractice law"). However, even before the 2003 amendments, the Texas Supreme Court had identified abatement as an appropriate remedy for notice issues. *See Schepps v. Presbyterian Hosp. of Dall.*, 652 S.W.2d 934, 938 (Tex. 1983); *Hagedorn*, 73 S.W.3d at 347–48 (citing *Schepps* for abatement remedy). So, in *Hagedorn*, the abatement was the result of an agreed trial court order. *See Hagedorn*, 73 S.W.3d at 347.

negotiation period triggered by the notice requirement [risks being rendered] . . . meaningless" as the defendant "c[an]not procure medical records . . . to investigate the claims asserted," *Jose Carreras*, 339 S.W.3d at 73; *see* Tex. Civ. Prac. & Rem. Code Ann. § 74.051(d) (providing that all parties are "entitled to obtain complete and unaltered copies of the patient's medical records" and that the plaintiff's statutorily compliant medical authorization form constitutes her compliance); *see also Hampton*, 687 S.W.3d at 509 (Boyd, J., dissenting) (observing that "Section 74.052 treats the failure to provide an authorization form the same as the provision of an authorization form that requires modification . . . [:] [b]oth warrant abatement").

In fact, *Shaikh*'s reasoning applies with even greater force in this case because the defendants' alleged choice—between the expert-report deadline and an abatement remedying their hindered presuit investigation—was purportedly made for them. It was Aldaco—not the Crane Parties—who sought an abatement based on the modified medical authorization form. So, if this Section 74.052(b) abatement tolled or extended the expert-report deadline, then not only were the Crane Parties forced to choose between their statutory right to an expert-report deadline and their statutory right to a remedial abatement, but Aldaco was given the right by fiat to make that choice for them.[11] As we pointed out in *Shaikh*, if we were to accept Aldaco's

---

[11]On appeal, Aldaco appears to argue that because the abatement lacked a legitimate statutory basis, it was a purely discretionary act of docket control and was broader in scope than a Section 74.052(b) abatement otherwise would have been. But

14

argument, the purpose of the statute would be thwarted. Such an interpretation would enable plaintiffs to serve faulty authorization forms for later amendment as a roundabout way of securing an otherwise-impermissible extension of the expert-report deadline. *Cf. Ogletree*, 262 S.W.3d at 319–21 (discussing legislature's decision to limit discretionary extensions of expert-report deadline); *Allstate Fire & Cas. Ins. Co. v. Dollard*, 679 S.W.3d 279, 286 (Tex. App.—Fort Worth 2023, no pet.) (explaining that a trial court "cannot skirt [a different] prohibition on extensions by backdating" or engaging in similar roundabout methods as doing so would be "granting an extension by another name"). Nothing in the MLA supports such an interpretation, and as in *Shaikh*, "[w]e cannot believe that the intent of the legislature to discourage frivolous lawsuits and encourage settlement of claims would be served by [that] construction, since the legislature has determined that failing to timely file an expert report means that the claim is either frivolous or at best has been prematurely brought."[12] *Shaikh*,

---

as already noted, the trial court's abatement order was expressly premised on Section 74.052(b), with corresponding scope and effect.

[12]Aldaco also protests that if she had served an expert report during the abatement, such service would have been a violation of the abatement order. But—even if we assume that this scenario could have presented a Catch-22 as she claims, *cf. Shaikh*, 2007 WL 3208592, at *1 & n.4 (noting that Shaikh's expert-report deadline expired while abatement was in effect but nonetheless holding that abatement did not extend or toll deadline); *Emeritus Corp. v. Highsmith*, 211 S.W.3d 321, 330 (Tex. App.—San Antonio 2006, pet. denied) (holding that agreed notice-related abatement did not extend or toll expert-report deadline and noting that "this holding is not inconsistent with the law of abatement generally; an abatement does not necessarily stay all proceedings")—Aldaco's argument is purely hypothetical. She had 120 days to serve her expert report, and only 60 of those days overlapped with the abatement. The

2007 WL 3208592, at *1 (quoting *Hagedorn*, 73 S.W.3d at 348); *see Hagedorn*, 73 S.W.3d at 348 (further commenting that the appellate court "fail[ed] to see how the claimant is damaged by being required to adhere to the statutory [expert-report] requirement" as the plaintiff "chooses when to file h[er] lawsuit and, at the time of filing, knows [s]he has [120] days to file h[er] expert medical report").

Thus, just as a Section 74.052(a) abatement does not toll or extend the expert-report deadline, the trial court's purported Section 74.052(b) abatement did not toll the expert-report deadline either. And because it is undisputed that Aldaco failed to serve the Crane Parties with her expert report within 120 days of their answers, her report was untimely. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). We sustain the Crane Parties' dispositive first issue.

## V. Conclusion

The purported Section 74.052(b) abatement did not toll Aldaco's expert-report deadline. *See id.* §§ 74.052(b), .351(a). Aldaco's expert report was therefore untimely, and the Crane Parties were entitled to dismissal of the claims against them, along with

---

abatement ended in November 2023, and Aldaco's expert report was not due until January 2024. *See Hagedorn*, 73 S.W.3d at 348 (holding that abatement did not extend or toll expert-report deadline and noting that "the question before this court is not whether the medical expert report could have been filed during the abatement period, since the report was not due to be filed until some three months after the end of the abatement period"). Aldaco thus had ample opportunity to timely serve her expert report after the abatement ended; the alleged Catch-22 scenario did not exist.

reasonable attorney's fees and costs. *Id.* § 74.351(b). The trial court abused its discretion by denying the Crane Parties' motion seeking this relief.

We reverse the trial court's order as to the Crane Parties,[13] and we remand the case to the trial court to "(1) award[] to the [Crane Parties] reasonable attorney's fees and costs . . . ; and (2) dismiss[] the claim[s] with respect to the [Crane Parties], with prejudice to the refiling of the claim[s]." *Id.*; *see* Tex. R. App. P. 43.2(d).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: March 20, 2025

---

[13]The trial court's order denying the Crane Parties' motion to dismiss also denied several other defendants' motions. Those defendants are not parties to this appeal, so we do not disturb the portions of the trial court's order addressing their motions.

17